IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**ORIGINAL**

John K. Foy

_(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)_

-against-

See attachment

_(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)_

Second Amended
**Complaint for Employment**
**Discrimination** & Civil Rights Violations

Case No. 1:23-**CV** 00656 KAM-SJB

_(to be filled in by the Clerk's Office)_

Jury Trial: ☑ Yes ☐ No
_(check one)_



RECEIVED
MAR 09 2023
PRO SE OFFICE

**Plaintiff**

~~Defendant No.~~ ____

Name **Jahn K. Foy**

Job or Title _____
(if known)

Street Address **517 Rogers Avenue**

City and County **Brooklyn, Kings**

State and Zip Code **New York, 11225**

Telephone Number **(347) 296-7000**

E-mail Address **JlKf1@Yahoo.com**
(if known)

Defendant No. **1** **(in her former individual, administrative, and official capacities.)**

Name **Honorable Janet DiFiore**

Job or Title **Former Chief Judge**
(if known)

Street Address **25 Beaver Street**

City and County **New York, New York**

State and Zip Code **New York**

Telephone Number **(800) 268-7869**

E-mail Address _____
(if known)

Defendant No. **2** **(in her individual, administrative and official capacities.)**

Name **Honorable Tamiko Amaker**

Job or Title **Acting Chief Administrative Judge**
(if known)

Street Address **25 Beaver Street**

City and County **New York, New York**

State and Zip Code **New York 10004**

Telephone Number **(800) 268-7869**

E-mail Address _____
(if known)

Defendant No. 3  (in his individual and official capacities)

Name  Honorable Peter P. Sweeney

Job or Title  State Supreme Court Justice

(if known)

Street Address  360 Adams Street

City and County  Brooklyn, Kings

State and Zip Code  New York, 11201

Telephone Number  (347) 401- 9520

E-mail Address  —

(if known)

Defendant No. 4 (in her individual and official capacities)

Name  Alia Razzaq

Job or Title  Chief Clerk

(if known)

Street Address  111 Centre Street

City and County  New York, New York

State and Zip Code  New York, 10013

Telephone Number  (646) 386- 5409

E-mail Address  —

(if known)

Defendant No. 5 (in his individual and official capacities)

Name  Charles A. Small

Job or Title  Chief Clerk

(if known)

Street Address  360 Adams Street

City and County  Brooklyn, Kings

State and Zip Code  New York, 11201

Telephone Number  (347) 296- 1800

E-mail Address

(if known)

Defendant No. 6 (in his individual and official capacities)

Name Dennis Quirk

Job or Title NYSCOA Union President
(if known)

Street Address 321 Broadway

City and County New York, New York

State and Zip Code New York, 10007

Telephone Number (212) 608-1124

E-mail Address _____
(if known)

Defendant No. 7 (in his individual and official capacities)

Name David Serrano

Job or Title Court Officer Major
(if known)

Street Address 141 Livingston Street

City and County Brooklyn, Kings

State and Zip Code New York, 11201

Telephone Number (347) 404-9222

E-mail Address dserrano@nycourts.gov
(if known)

Defendant No. 8 (in her individual and official capacities)

Name Tawya Young

Job or Title Court Officer Major
(if known)

Street Address 89-17 Sutphin Boulevard

City and County Jamaica, Queens

State and Zip Code New York, 11435

Telephone Number (718) 262-7138

E-mail Address _____
(if known)

Defendant No. 9 (in his individual and official capacities)

Name Francis (AKA Frank) Shea

Job or Title Sergeant Court Officer

(if known)

Street Address 141 Livingston Street

City and County Brooklyn, Kinds

State and Zip Code New York, 11201

Telephone Number (347) 404-9222

E-mail Address fshea @ nycourts.gov

(if known)


Defendant No. 10

Name New York State Unified Court System (UCS)

Job or Title _____

(if known)

Street Address 25 Beaver Street

City and County New York, New York

State and Zip Code New York, 10004

Telephone Number (212) 428-2700 / (800) 268-7869

E-mail Address _____

(if known)


Defendant No. _____

Name _____

Job or Title _____

(if known)

Street Address _____

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

(if known)

State and Zip Code      _____

Telephone Number      _____

E-mail Address      _____
(if known)

**C.**    **Place of Employment**

The address at which ~~I sought employment~~ or was employed by the defendant(s)
is:

Name      Kings Civil Court (UCS)

Street Address      141 Livingston Street

City and County      Brooklyn, Kings

State and Zip Code      New York, 11201

Telephone Number      (347) 404-9222

**II.**    **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that
apply)*:

     ☑      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).

              *(Note: In order to bring suit in federal district court under Title VII, you
must first obtain a Notice of Right to Sue letter from the Equal
Employment Opportunity Commission.)*

     ☐      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C.
§§ 621 to 634.

              *(Note: In order to bring suit in federal district court under the Age
Discrimination in Employment Act, you must first file a charge with the
Equal Employment Opportunity Commission.)*

     ☑      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112
to 12117.

              *(Note: In order to bring suit in federal district court under the Americans
with Disabilities Act, you must first obtain a Notice of Right to Sue letter
from the Equal Employment Opportunity Commission.)*

3

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.  Are you bringing suit against *(check all that apply)*:

☑ State or local officials (a § 1983 claim)

☐ Federal officials (a *Bivens* claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Loudermill hearings; First and
Fourteenth Amendment violations;
see attachment

C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_____

_____

_____

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

See attachment.

_____

_____

4

☑ Other federal law *(specify the federal law)*:
Please see attachment

☑ Relevant state law *(specify, if known)*:
Please see attachment

☑ Relevant city or county law *(specify, if known)*:
N.Y.C. Admin Code § 8-107 (1); et seq

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☑ Termination of my employment.

☐ Failure to promote me.

☑ Failure to accommodate my disability.

☑ Unequal terms and conditions of my employment.

☑ Retaliation.

☑ Other acts *(specify)*: Harassment; attached

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
Please see attachment

C.     I believe that defendant(s) *(check one)*:

         ☑     is/are still committing these acts against me.

         ☐     is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

         ☑     race _____

         ☑     color_____

         ☑     gender/sex _____

         ☐     religion _____

         ☐     national origin _____

         ☐     age. My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*

         ☑     disability or perceived disability *(specify disability)* Panic disorder

E.     The facts of my case are as follows. Attach additional pages if needed.

Attached

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV.    **Exhaustion of Federal Administrative Remedies**

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

   <u>Within the required timeframe</u>

B.    The Equal Employment Opportunity Commission *(check one)*:

   ☐    has not issued a Notice of Right to Sue letter.

   ☑    issued a Notice of Right to Sue letter, which I received on *(date)*
   <u>28 December 2022</u>.

   *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

   Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

   ☐    60 days or more have elapsed.

   ☐    less than 60 days have elapsed.

V.    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

<u>Please see attachment.</u>

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Mar. 6ᵗʰ, 2023

Signature of Plaintiff

Printed Name of Plaintiff _____ John K. Foy _____

<u>**SECOND AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF**</u>

In Violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203; in Violation of § 503/504 of the Rehabilitation Act; in Violation of New York State Human Rights Law (NYSHRL); in Violation of the New York City Human Rights Law (NYCHRL"), N.Y. City Admin. Code § 8-101 et seq; in Violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; in Violation of New York State Penal Law § 190.25; in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq; Retaliation in Violation of §15 (a)(3) of the Fair Labor Standards Act; et seq; in Violation of the First, and Fourteenth Amendments to the Constitution under 42 USC § 1983, 1985, and 1986; in Violation of the First, and Fourteenth Amendments to the Constitution under Title 18 U.S.C. § 242; in Violation of Title 18 U.S.C. § 1341; in Violation of Rights under 42 U.S. Code § 2000e-2; in Violation of the Loudermill Right; in Violation of NYS Department of Labor Laws and Guidelines; fraud; forgery in the second degree; false impersonation of a public official which is criminal impersonation in the second degree; Defamation; Intentional Infliction of Emotional Distress; Breach of Implied Covenant of Good Faith and Fair Dealing; Violation of Rights under 42 U.S.C. § 1985 (1)(2), and (3).

**Jury Trial Demanded.**

## JURISDICTION AND VENUE

1. This action arises under the protections of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203; § 503/504 of the Rehabilitation Act; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq; §15 (a)(3) of the Fair Labor Standards Act; the Loudermill Right; and the First, and Fourteenth Amendments of the Constitution. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331, as well as under 28 U.S.C. 1343 (a)(1)(2)(3) and (4), and 28 U.S.C. 2202. This suit is authorized and instituted pursuant to the above federal statutes. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq; §15 (a)(3) of the Fair Labor Standards Act; the Loudermill Right, and the First and Fourteenth Amendments to the Constitution. This Court has ancillary jurisdiction of the State law claims, because they are sufficiently related to the federal claims.

2. Venue is proper under 28 U.S.C. § 1391, because Kings Civil Court, where the Plaintiff was employed, is located in this district. Venue is also proper, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

### 3. **PLAINTIFF**

**JAHN K. FOY (hereinafter "Plaintiff")** resides in Kings County, New York.

**Address: 517 Rogers Avenue, Brooklyn, NY, 11225**
**Cellular: (347) 296-7000**
Email: jlkf1@Yahoo.com

### 4. **DEFENDANTS:**

**A) Honorable Janet DiFiore (in her former individual, administrative, and official capacities[1]):**

**Address: 25 Beaver Street, New York, NY 10004**
**Phone number: (800) 268-7869**

The above named party held the position of Chief Judge of the State of New York during the time the injuries to the Plaintiff occurred. After commencing a lawsuit due to those injuries, the Plaintiff sought the Judge's assistance. The former Chief Judge played a role in obstructing the Plaintiff's justice. The Plaintiff also believes that the Chief Judge did not take the appropriate action that could have remedied the harm.

**B) Honorable Tamiko Amaker (in her individual, administrative, and official capacities):**

**Address: 25 Beaver Street, New York, NY 10004**
**Phone number: (800) 268-7869**

The Acting Chief Administrative Judge of the Courts. On behalf of the Chief Judge, the Acting Chief Administrative Judge oversees the day-to-day operations of the Statewide court system. She holds the authority to reverse what non-judical court employees

unlawfully did to the Plaintiff.

**C) Honorable Peter P. Sweeney (in his individual and official capacities):**

**Address: 360 Adams Street, Brooklyn, NY 11201**
**Phone number : (347) 401-9520**

Judge Sweeney violated the Plaintiff's civil rights, specifically by acting under the color

of law in violation of the Plaintiff's civil rights under 42 U.S.C. §1983, and 42

U.S.C. § 1985, and 1986 along with other civil rights violations as described in the body

of the Complaint.

**D) Alia Razzaq (in her individual and official capacities):**

**Address: 111 Centre Street, New York, N.Y. 10013**
**Phone number: (646) 386-5409**

Chief Clerk, Civil Court of the City of New York. Assists the local administrative judge in

carrying out his responsibilities for supervising the day-to-day operations of the trial

Courts that he oversees. Committed mail fraud, forgery, criminal impersonation

of a public official, and conspired to unlawfully discharge the Plaintiff from her court

officer position.

**E) Charles A. Small, Esq (in his individual and official capacities):**

**Address: 360 Adams Street, Brooklyn, NY 11201**
**Phone number: (347) 296-1800**

Chief Clerk. Kings (Brooklyn) Supreme Court, Civil Term. Assists the local

administrative judge in carrying out his responsibilities for supervising the day-to-day

4

operations of the trial courts that he oversees. Committed mail fraud. and 42 U.S.C. 1985 and 1986 violations against the Plaintiff.

### F) Dennis Quirk (in his individual and official capacities):

**Address: 321 Broadway, New York, NY 10007**
**Phone number: (212) 608-1124**

New York State Court Officer Association (NYSCOA) Union President. Committed mail fraud, and 42 U.S.C. 1985 and 1986 violations against the Plaintiff.

### G) Major David Serrano (in his individual and official capacities):

**Address: 141 Livingston Street, Brooklyn, NY 11201**
**Phone number: (347) 404-9222**

Commanding Court Officer at Kings Civil Court. Committed and allowed civil rights violations against the Plaintiff: 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203, and 42 U.S.C. 2000e, et seq; along with other violations described within the body of the Complaint. He also has supervisor liability for the deeds that individuals, who were under his command leadership, committed against the Plaintiff.

### H) Major Tawya Young (in her individual and official capacities):

**Address: 89-17 Sutphin Boulevard, Jamaica, NY 11435**
**Phone number: (718) 262-7138**

Formerly a first line court officer supervisor at Kings Civil Court. Committed fraud, acted under the color of law in violation of the Plaintiff's civil rights under 42 U.S.C. §1983, 42 U.S.C. § 1985, and 42 U.S.C. § 2000e, et seq, along with other civil rights violations

against the Plaintiff as described in the body of the Complaint.

**I) Sergeant Francis (AKA Frank) Shea**

**(in his individual and official capacities):**

**Address: 141 Livingston Street, Brooklyn, NY 11201**
**Phone number: (347) 404-9222**

Committed fraud, acted under the color of law in violation of the Plaintiff's civil

rights under 42 U.S.C. §1983, 42 U.S.C. § 1985, and 42 U.S.C. § 2000e, et seq, along

with other civil rights violations against the Plaintiff as described in the body of the

Complaint.

**J) New York State Unified Court System (UCS):**

**Address: 25 Beaver Street, New York, NY 10004**
**Phone number: (212) 428-2700 / (800) 268-7869**

The Judiciary of New York, which is also the parent agency that employs the persons

named in this lawsuit.

**1) Note: All Defendants are named and being sued in their individual,**
**administrative - if applicable, and official capacities.**

## EXHAUSTION OF REMEDIES

5. Plaintiff timely filed a complaint with the Equal Employment Opportunity

Commission. The U.S. The Department of Justice (DOJ) issued Notices of Right to Sue

via email to the Plaintiff on 28 December 2022. (Copy of DoJ letters are annexed as

Exhibit A). The Plaintiff has therefore exhausted her administrative remedies.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

## INTRODUCTION

6. The New York State Unified Court System (UCS) employed the Plaintiff as a court officer from February 13th, 2003 until February 18th, 2020. She was assigned to Kings Civil Court (KCC). Court officers who worked at that command exclusively made a decision to remove the Plaintiff from her job as a court officer. With nefarious intentions, a fraudulent document, and the assistance of other non-judicial court personnel, they physically executed the termination of her employment on February 18th, 2020, without any UCS authority authorizing it, or knowing that it even happened. Their actions were beyond the scope of their job description, completely unlawful, and done purely in bad faith. The underlying reason for the termination was due to those very same individuals, who carried out the unlawful discharge, attempting to hide disparate treatment discrimination they committed against the Plaintiff. The primary reason for the termination was to retaliate against the Plaintiff for using her protected right to free speech to write and speak about the discrimination in a complaint that she made.

## NEW YORK STATE COURT OFFICER'S JOB DESCRIPTION

7. According to the nycourts.gov website the job description of a court officer follows. "Court officers are peace officers who are required to wear uniforms and carry firearms. They are charged with providing law enforcement, security services, and maintaining order within court facilities statewide. Court officers also execute bench

warrants and make arrests."

8. It is not written in the official court officer job description for a court officer to determine who to hire or fire for the UCS. Nor is it written in the collective bargaining agreement.

9. It is not written in the official court officer job description for a court officer to fire any individual from the UCS by discharging him, her, or they from an employed position, to include a fellow court officer of any rank. Nor is it written in the collective bargaining agreement.

## SERRANO, YOUNG, AND SHEA HARASSING THE PLAINTIFF AND PUTTING THEIR SCHEME TO UNLAWFULLY TERMINATE HER INTO ACTION

10. At the preliminary stage of this unlawful termination, individuals involved were Major Serrano who is the commander of KCC court officer personnel, Lieutenant Tawya Young (now Major), and Sergeant Frank Shea, the Plaintiff's Union delegate during that time. They achieved this by creating a ruse which included fabricating a fraudulent document, on or before December 10th, 2019. They then presented this document to the Plaintiff in the form of a "Performance Enhancement Memorandum" on December 10th. The memorandum indicated the Plaintiff needed to improve upon her attendance due to alleged lateness that allegedly occurred six months prior. (Copy of Memorandum dated December 10th, 2019, is annexed as Exhibit B). The Plaintiff was shocked at the timing, but then realized those allegations were retaliatory, and in temporal proximity to what began as an inquiry she made to them, in July 2019, concerning an award that ended

up as an EEOC worthy complaint after she obtained factual information on the matter. She did not agree with the contents of the memorandum. She knew what was being alleged did not happen, and she felt she was deliberately being harassed due, in part, to her gender, her disability and her military service among other biases they had against her. This encounter was just another instance of a hostile work environment that she had similarly experienced with the court officer leadership that had been ongoing for many years. The allegations of the Plaintiff needing improvement didn't make sense particularly since they had to go back six months to find dates she allegedly needed to improve upon. Moreover, none of the allegations thereon were factual or proven as true. And the Plaintiff did not provide any input whatsoever to the document as it is written to appear. The memorandum was complete in totality when Major Serrano handed it to her at that unscheduled meeting between the three named officers and herself. The Plaintiff was not given the opportunity to provide any input to the so-called performance enhancement memorandum at all. After the meeting Frank Shea was unsuccessful at trying to take the memorandum away from the Plaintiff. She presented it as evidence for her Article 78 review.

11. The December 10th memorandum is filled with falsehoods and allegations Major Serrano fabricated, as a pretext to cover up the disparate treatment discrimination concerning the award, and for what would be the Plaintiff's unlawful discharge from her job. In fact, the Plaintiff's unlawful termination from her job is based

solely on the false allegations in that memorandum, aside from the fact that the individuals who made the decision and carried out the termination were unauthorized to do so. The Plaintiff learned that Maj Serrano used the allegations and responses he fabricated in the December 10th memorandum to justify the request he made, on December 11th, to Alia Razzaq the Chief Clerk of Manhattan Civil Court, to terminate her employment. What is also a fact is that before the supposed discovery of the Plaintiff's alleged lateness the termination letter had already been completed on October 2nd, 2019 and ready for service. (Copy of October 2nd, 2019 transmittal memorandum is annexed as Exhibit C). They just needed a reason to serve it to her. Those false allegations and responses that Major Serrano made up turned out to be that reason. A little over two months after presenting the performance enhancement memorandum to the Plaintiff, Serrano, Young, and Shea reached their goal of terminating her employment. This plan included falsely impersonating Judge George J. Silver who was the Deputy Chief Administrative Judge (DCAJ) for New York City courts at the time.

## THE PLAINTIFF BEING UNLAWFULLY DISCHARGED

12. On February 18th, 2020 around 4:45 PM without prior notice or warning, acting under the color of State law, Lieutenant Tawya Young and Sergeant Frank Shea used a second fraudulent document complete with a forged signature to harass and remove the Plaintiff from her court officer position in the act of firing her. This took place on a day that Major Serrano was absent from the command.

13. Using that fraudulent document with Judge Silver's signature affixed on the signature block with a stamp, put there by non-judicial court personnel who worked closely with the judge and had access to his signature stamp, Young and Shea presented it to the Plaintiff as a termination letter. (Copy of the termination letter is annexed as Exhibit D). They then relieved the Plaintiff of her work related property to include her two 9mm handguns by ordering her to turn the weapons and everything else issued by their employer over to them. This was done with additional court officers standing nearby observing. As he was taking the Plaintiff's belongings Frank Shea said, "Dennis", who is the court officer Union president, said, "there's nothing we can do about this." Lieutenant Young then escorted the Plaintiff down the elevator for her to exit the courthouse. For these reasons alone the Plaintiff is no longer working in her job as a court officer.

14. The termination letter the Plaintiff received from Tawva Young and Frank Shea is an unauthorized illegally fabricated forged document containing the same false allegations from the December 10th performance enhancement memorandum.

15. The termination letter the Plaintiff received was not in compliance with the guidelines set forth by the New York State Department of Labor (DOL). (Copy of DOL Guidelines are annexed as Exhibit E). Without any given notice the Plaintiff was terminated, she didn't have continued healthcare or the option to continue her healthcare (and this unlawful discharge took place at the beginning of the COVID pandemic), she did not receive her terminal paycheck until a few weeks after she called

and spoke to a payroll representative who admitted that office was unaware she was terminated, further the Plaintiff didn't even have an exit interview with human resources or an appointment scheduled on her behalf with that office. Procedurally the process that was used to terminate the Plaintiff was completely counter to what is set forth in New York State Labor Laws. This is because the termination letter is a forgery, and what happened to her was unauthorized and unlawful. The Plaintiff was also denied pre and post Loudermill meetings.

16. Judge Silver did not make the determination to terminate the Plaintiff's employment from the UCS; Major Serrano made that determination as part of the scheme.

17. Judge Silver did not authorize anyone to fabricate a termination letter or sign said letter on his behalf.

18: There was no just cause for the Plaintiff to be terminated. Judge Silver had no knowledge of the Plaintiff's termination. No one, who had the authority to legally terminate her, knew of the Plaintiff's discharge until she commenced a proceeding, and began writing emails and letters to inquire about the status of her case due to it taking an unusually long period of time to be processed through the court system.

19. The Plaintiff went to Kings Civil Supreme Court, which was her rightful jurisdiction when she decided to fight her unlawful termination. Clerks there erroneously directed her to the "Court of Claims in Albany, New York" to commence her lawsuit. Judge Sise, the judge who presided over her case there, could not grant the relief the

Plaintiff sought due to not having jurisdiction. Before the case was partially dismissed

for that reason the New York State Attorney General's office, representing the State and

Judge Silver moved to have the judge's name removed from the caption of the lawsuit.

In accordance with New York State Civil Practice Laws and Rules, if Silver made the

determination to terminate the Plaintiff's employment, then his name should have

remained within the caption.

## DISPARATE TREATMENT DISCRIMINATION

20. In July 2019 the Plaintiff made a verbal inquiry to Sergeant Frank Shea

concerning a court officer awards ceremony that was to take place in the fall of that

year. Never receiving an acceptable response to that inquiry, she eventually followed up

with an email on November 1st, 2019, addressed to Serrano and Shea. (Copy of

November 1st, 2019 email is annexed as Exhibit F). A few weeks after receiving the

email, Shea met with her to prepare her for a future meeting with Serrano, Young, and

himself. On behalf of Major Serrano, Shea suggested that the Plaintiff recant her

statements from the email. When she refused Shea threatened adverse consequences

would result.

21. That future meeting took place in mid-November 2019. While there the

Plaintiff told Serrano, Young, and Shea, she knew they were already aware, that

although she was directly involved in an incident on March 11th, 2019 with two other

officers at the command and played a significant role, she learned the official incident

report for that incident did not reflect that. (Copy of the incident report is annexed as Exhibit G). The incident report was written to diminish her role. The other two officers directly involved, who are white, were scheduled to receive awards for the acts they each performed in the incident. She was not. The sole male received his award at the annual awards ceremony. The other woman was told she would be taken care of, just not at the ceremony (which of course is sex/gender discrimination), and the Plaintiff was not nominated for an award at all. She is black. This was obviously sex/gender, color and race discrimination.

22. The said incident report was submitted to the district attorney's office and used in a court proceeding against the subject named in the incident.

23. Before Major Serrano mitigated the Plaintiff's concerns about the disparate treatment discrimination, he made a request to Alia Razzaq to have her terminated. His request was based on the false entries he fabricated for the December 10th memorandum.

## THE SCHEME TO UNLAWFULLY DISCHARGE THE PLAINTIFF FROM HER EMPLOYMENT UNCOVERED

24. The proximate cause for this unauthorized determination and subsequent unlawful discharge that took place at the time that it did was to avoid addressing the discrimination the Plaintiff outlined in that November 1st email she sent to Serrano and Shea, and then complained to them and Young about during that mid-November

meeting. The performance enhancement memorandum was just a pretext to the discriminatory animus. The fraudulent termination letter followed, containing the same false allegations.

25. Neither Alia nor Judge Silver were made aware that the Plaintiff complained to her command leadership about the discrimination they committed against her. That issue was never remedied.

26. Evidence shows that Major Serrano went against UCS standard operating procedures, and made a request to Chief Clerk Razzaq to terminate the Plaintiff. Taking part in the scheme she complied, and provided Serrano with the fraudulent termination letter that Young and Shea served on the Plaintiff. Serrano wanted the Plaintiff discharged from her employment to retaliate against her for not recanting what she wrote in that email concerning the disparate treatment discrimination. And that's against the law.

27. As a Union member the Plaintiff's Union Steward should have fought against the ploy to illegally remove her from her position. Not only did Frank Shea threaten the Plaintiff, he actively participated in this unauthorized, unlawful discharge. He breached his duty of fair representation on behalf of the Plaintiff, he violated her protected right to free speech by requesting she recant her statements from the email, then retaliated against her for not complying. Shea also failed to remedy the Plaintiff's original complaint about the discrimination.

28. Court officers were not the Plaintiff's employer. They had no legal right or

authority vested in them to discharge her. There wasn't any involvement or interaction with any other office or authority representing the UCS in the termination process. Not before, not during, or even after the Plaintiff's unlawful discharge from her employment. She was denied the opportunity to confer with Judge Silver, which is why she emailed him afterwards to appeal to him. She was denied the opportunity to confer with Major Serrano - the overall supervisor of KCC court officers due to him being absent from the command that day. She was denied the opportunity to speak with anyone representing payroll, until she called that office concerning her final paycheck. She was denied the opportunity to either outprocess or speak with anyone representing Human Resources. She wasn't even afforded the opportunity to speak with the chief clerk of KCC before two court officers acted without providing any notice and discharged her. One being the Plaintiff's Union delegate Frank Shea who threatened her, because she used her protected right to free speech. The other was Tawya Young, the officer whose duty it was to oversee the composition and submission of incident reports for the command.

29. At no time throughout this entire process was Judge Silver directly asked, made an admission to, or in any way communicated his knowledge of what took place concerning the Plaintiff's termination. From information and belief there is no testimony or personal documentation at all on record from the former Deputy Chief Administrative Judge on this matter. Yet, the UCS continues to make an effort to portray that Judge Silver made the determination to end the Plaintiff's employment.

30. Judge Silver was a supreme court justice. In accordance with CPLR § 506, an Article 78 to appeal a determination he would have made should have been held in the Appellate Division as the original jurisdiction, instead it was held at a lower court.

31. Why wasn't the Plaintiff's case sent to that venue to be reviewed in accordance with the CPLR? No one I asked from the UCS would give me that answer.

32. This unlawful termination included the crimes of fraud, forgery in the second degree, the false impersonation of a public official which is criminal impersonation in the second degree, and mail fraud which is specifically a federal white collar offense.

33. In addition to the discrimination the Plaintiff was subjected to, the Defendants have defamed her character. Aside from Quirk and Razzaq being carbon copied to the plaintiff's termination letter, there were four other persons listed as receiving a copy (Exhibit D). Who are they and why were they given a copy of this fraudulent document? The Plaintiff has never met with them, and doesn't know who they are.

34. The Plaintiff was terminated for doing her job well. The Defendants have made that appear not to be the case by writing untrue libelous statements about her, thereby slandering her reputation. They then unlawfully discharged her from her employment based on nothing more than those falsehoods written in the December 10th memorandum.

## MAIL FRAUD

35. To ensure the Plaintiff remained unemployed, and the scheme hidden from the UCS authorities two additional fraudulent letters were fabricated, and then sent through the United States Postal Service which is consistent with mail fraud. (Copy of letter is annexed as Exhibit H). Evidence points to Dennis Quirk, the New York State Court Officer Association (NYSCOA) Union president, and Alia Razzaq, the Chief Clerk at Manhattan Civil Courthouse, being responsible for this. One letter was mailed to the Plaintiff's home address in Brooklyn, New York, dated November 20th, 2020, having the same forged signature affixed on the signature block using Judge Silver's signature stamp. Quirk and Razzaq are the only persons carbon copied to the letter. The other letter appeared to have been sent to the Plaintiff's temporary address where she resided while stationed on active duty with the army in Hawaii, because that address was written on a second address line in the letter she received, seemingly to indicate one had been sent there.

36. The opposition papers the Defendant eventually submitted for their defense in the Article 78 "proceeding", describes how Major Serrano made the determination to end the Plaintiff's employment with the UCS, so the "Judge Silver letter" is a complete sham. The letter was unsolicited and sent after the Plaintiff commenced a lawsuit to regain her job. Actually, the Plaintiff theorizes the letter was sent for two reasons: to taunt her for being on active duty in Hawaii, and to divert her attention to the two

individuals who are carbon copied in order to open up the lines of communication with them, so they could continue to impersonate Judge Silver through correspondence, and discourage her from pursuing legal action.

37. The relationship the Plaintiff had with Judge Silver, and Dennis Quirk was severed when she was unlawfully discharged. Aside from Alia being the chief clerk, there was never a working relationship between herself and the Plaintiff. However, the Plaintiff has evidence that Alia knowingly assisted in obtaining the forged termination letter and was trying to redress the situation by sending that aforementioned letter through the mail. Depending on the circumstances, judges are represented by either the OCA Counsel's Office, or the New York State Attorney General's Office. The Plaintiff had already commenced the Article 78 special proceeding when she received the letter. Nine months had passed since she was unlawfully terminated and tried to appeal to Judge Silver about the determination by emailing him. It is a fact that once an attorney represents a party in a lawsuit all communication with the opposing party is done through that attorney. She received a receipt for an index number for her Article 78 in the mail the same day she received that fraudulent letter. One of the two offices would have sent the letter, not Judge Silver. As a lawyer himself and a judge he would know not to send a letter directly to a Plaintiff's home that initiated a lawsuit against him, particularly since he did not make the determination to terminate her employment. Furthermore, the Plaintiff realized she had been unlawfully discharged, and didn't ask

for or need a status update on a situation that hadn't changed.

## AN ADDITIONAL COUNT OF MAIL FRAUD

38. Due to waiting an extraordinarily long period of time to have her case reviewed in the proper venue, which should have been in New York Supreme Court Appellate Division – Second Department, well after she submitted the appropriate forms, and paid the required fees in order for that to take place, the Plaintiff contacted Judge Janet Difiore – the Chief Judge for the UCS at that time, for assistance. She in turn received in the mail a letter from Charles A. Small, the Chief Clerk for Civil Matters at Kings County Supreme Court, on behalf of the Chief Judge. (Copy of letter is annexed as Exhibit I). The letter illustrates how authorities within the UCS made a concerted effort to try to deceive the Plaintiff into believing that her case was being properly handled and directed through the system to be fairly adjudicated. However, what was written in the letter totally contradicted the appropriate law and procedure for the Plaintiff's case. Again, if Judge Silver, who was a Supreme Court Justice, made the determination to terminate the Plaintiff's employment, then her Article 78 should not have been reviewed in the venue in which it was. Receiving such a letter from the court system also falls under the crime of mail fraud, because the intention of the letter was to deceive the Plaintiff and deprive her of her Constitutional right to due process and her Employment.

## THE UCS' CONTINUANCE WITH BIAS AND RETALIATION

39.  As the judicial branch of the State government and as an employer, the UCS has failed at making this right. They've pushed back in retaliation by completely ignoring the law, court procedures they've established, and due process.

40. Evidence shows that authorities representing the UCS eventually realized Serrano, Young, Shea, Quirk, and Razzaq unlawfully discharged the Plaintiff. Yet, they continued to try to deceive her, so that she would think her termination was lawful. Three of those authorities representing the UCS were Chief Judge DiFiore, Honorable Peter P. Sweeney, and Charles A. Small.

41. On February 3rd, 2022, acting under the color of law, Honorable Peter P. Sweeney, made a decision to dismiss the Plaintiff's Article 78 petition to be reinstated into her court officer position. Not only did he lack jurisdiction to review the Plaintiff's case, the Respondents did not submit their opposition papers on time or request an extension. Meaning, they defaulted. What took place was completely counter to the CPLR. If Judge Silver actually made the determination to terminate the Plaintiff's employment, then how could a judge he once supervised as the DCAJ, be impartial when reviewing a determination he supposedly made?

42. Court officers and non-judicial court personnel do not hold the authority of a New York State official or administrative agency to make a determination against a UCS employee. What Judge Sweeney did was also try to deceive the Plaintiff by justifying

the unlawful termination those individuals carried out. Their actions were consistent with committing a criminal act. By having reviewed the Plaintiff's Article 78 and dismissing it, Judge Sweeney was complicit in that criminal activity.

43. Judges Difiore and Sweeney both obstructed due process, and allowed the retaliation to persist and a conspiracy to further develop. Judge DiFiore could have simply reinstated the Plaintiff. She instead requested Chief Clerk Small to send her a letter containing information that, as attorneys with a great depth of experience in the court system, would know was against the New York State laws, Civil Practice Law and Rules and established court procedures. Judge Sweeney also obstructed due process by not adhering to the New York State laws, Civil Practice Law and Rules, and the established rules of court procedure. Judge Difiore, Judge Sise, and Judge Sweeney were in a position to simply ask Judge Silver directly about the Plaintiff's termination. If they had, his answer is not on record.

44. Authorities within the UCS do not want to accept accountability for what happened to the Plaintiff within the structure of their agency. Laws were broken and crimes were committed. Non-judicial court personnel unlawfully discharged the Plaintiff from her employment. In their administrative roles the current Chief Judge and the Acting Chief Administrative Judge holds the authority to reinstate her. To date they have not done so. For them to do nothing is a breach of an implied covenant of good faith and fair dealing.

## FIRST CAUSE OF ACTION

**Discrimination and Retaliation, Hostile Work Environment in Violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203, in Violation of § 503/504 of the Rehabilitation Act, in Violation of NYSHRL, and in Violation of the New York City Administrative Code, Title 8: Civil Rights § 8-107 Unlawful Discriminatory Practices against the UCS, Major Serrano, Major Tawya Young, Sergeant Francis (AKA Frank Shea).**

45. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

46. At all times material to this Complaint all of the provisions listed under this cause of action were in effect and binding on the Defendant. Title I of the Americans with Disabilities Act prohibits private employers, State and local governments, employment agencies and labor unions from discriminating against qualified individuals with disabilities in applying for jobs, hiring, firing and job training.

47. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, Title II applies to State and local government entities, and, in subtitle A, protects qualified individuals with disabilities from discrimination on the basis of disability in services, programs, and activities provided by State and local government entities.

48. New York State Human Rights Law prohibits discrimination against persons with disabilities in employment. The NYSHRL covers all employers (regardless of number of employees), and applies to employment agencies, labor organizations, and

apprentice programs.

49. The New York City Administrative Code, Title 8: Civil Rights § 8-107 Unlawful Discriminatory Practices were in effect and binding on the Defendant. The requirement follows:

1. Employment. It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person:

(2) To refuse to hire or employ or to bar or to discharge from employment such person.

**And:**

7. Retaliation. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter.

50. Due to the Plaintiff's disability and other protected characteristics, her Union delegates and supervisors retaliated against her by imposing unfair and discriminatory conditions, whereupon her attendance was unfairly scrutinized. She believes that laid the foundation for Serrano, Young, and Shea to harass her at any given moment about attendance, creating a hostile work environment. One of those times took place specifically on December 10th, 2019, with them presenting an already completed

24

performance enhancement memorandum to her that contained false allegations and falsified responses. The falsified entries in that memorandum, in part, led to the Plaintiff's unlawful discharge.

51. What also led to the Plaintiff's unlawful discharge was the fact that she complained to the above named individuals about disparate treatment discrimination. Rather than addressing the issue, Shea threatened the Plaintiff on behalf of Serrano. They then devised a scheme based on attendance to unlawfully discharge her from her employment by using a falsified termination letter.

52. As a direct proximate result of such harassment, discrimination, and retaliation, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

53. Plaintiff has further suffered and will continue to suffer a loss or earnings and other employment benefits, whereby the Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

54. Defendant's actions constituted a willful violation of the above-mentioned federal, State, and city laws, and regulations. As a direct result, the Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses in seeking to compel Defendant to fully perform its obligations under federal, State, and city law in amounts according to proof at time of trial.

55. The conduct of the Defendant described hereinabove was outrageous and was executed with malice, fraud, and oppression, and with conscious disregard for the Plaintiff's rights, and further, with the intent, design, and purpose of injuring the Plaintiff.

56. As a proximate result of the actions and conduct described hereinabove, which constitute violations of the laws and federal statutes in this cause of action, the Plaintiff has been damaged in an amount according to proof at the time of trial, and seeks all relief allowable by law including without limitation double back pay, declaratory relief, make-whole relief, civil penalties, litigation costs, and expert witness fees against the Defendant pursuant to the laws and regulations in this cause of action.

## SECOND CAUSE OF ACTION

**NYSHRL , N.Y. Executive Law, Article 15 Human Rights Law § 296. Unlawful Discriminatory Practices against the UCS, the NYSCOA, Major David Serrano, Major Tawya Young, Sergeant Francis (AKA Frank) Shea .**

57. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

58. At all times material to this Complaint the provisions listed under this cause of action were in effect and binding on the Defendant. They state:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or

status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

(e) For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

(h) For an employer, licensing agency, employment agency or labor organization to subject any individual to harassment because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, status as a victim of domestic violence, or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims.

59. The Plaintiff complained to the court officer leadership at the command in which she worked, KCC, about them discriminating against her. She began complaining about that particular instance of disparate treatment discrimination in July 2019. Due to none of them adequately responding to her concerns, she eventually expressed how she felt in an email she wrote to them, dated November 1st, 2019. The message was addressed to Major Serrano and Sergeant Frank Shea.

60. Instead of them addressing the issues she outlined in the email, they threatened her, then ultimately fabricated untrue allegations against her that would lead to her unlawful discharge on February 18th, 2020.

61. Frank Shea was the Plaintiff's Union delegate. By not assisting the Plaintiff in any way, and actually conducting the firing himself with the help of Lieutenant Tawya Young he unduly expelled the Plaintiff from the Union because she complained of practices that violate these specific laws.

62. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humilation, and mental anguish, all to her damage in an amount according to proof.

### THIRD CAUSE OF ACTION

### (Fraud: New York State Penal Law § 190.25, Criminal impersonation in the second degree; Violation of NYS Labor Laws against the UCS, Honorable DiFiore, Charles A. Small, David Serrano, Tawya Young, Frank Shea, Alia Razzaq)

63. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

64. At Kings Civil Courthouse, located at 141 Livingston Street, Brooklyn, NY, on February 18th, 2020 around 4:45 PM a fellow court officer relieved the Plaintiff from her courtroom assignment. He informed her to meet with Lieutenant Tawya Young and Sergeant Frank Shea in Operations. Upon her arrival there were no other supervisory

staff present to include Major Serrano, who is the court officer commander at Kings Civil Courthouse. She was then directed to a side office where Lieutenant Young, acting on her own accord and under the color of State law, handed her a document, and said, "It happened." The Plaintiff was bewildered, because she did not know what Young meant by that. After reading the document she interpreted it as being terminated from employment, since that is what was written thereon.

65. The time of day this illegal discharge took place was integral to their scheme, because at the end of the workday there would be no one available to assist the Plaintiff had she called or gone to 25 Beaver Street, where OCA Human Resources is located, or called or gone to where Judge Silver's chambers were located at 111 Centre Street, so it is now clear to the Plaintiff that what Young and Shea did was planned and deliberate. Also, the fact that out of the six supervisors who were normally assigned and present at that command just those two were there at that particular time.

66. Young and Shea used their positions as first line supervisors to defraud the Plaintiff out of her employment. Other court officers who were specifically posted at that assignment stood in the doorway, and observed while they were performing this unlawful termination for intimidation purposes, and to humiliate her (because that's how the Plaintiff felt). It was truly a spectacle. Young and Shea ripped the Plaintiff of all of her credentials and State issued property by demanding that she turn everything over to them. As it was happening, Shea, on his own accord, and acting under the color of State law, said, "Dennis", who is the New York State Court Officer Association President, "said there's nothing we can do about this", Lieutenant Young then escorted her to the lobby to depart the courthouse. All of this, and it was based on complete

falsehoods, personal biases against the Plaintiff, and for a cover up. What Young and Shea did was unlawful.

67.  Court officers are employees of the UCS who don't hold the authority to discharge a fellow court officer. There was no legitimate reason or just cause for the Plaintiff to be terminated - particularly not by them. A few months prior to the unlawful termination the Plaintiff complained to Serrano, Young, and Shea about discrimination they committed against her. So, this unlawful discharge was done to retaliate against the Plaintiff for exercising her protected right to free speech, and to also cover up the discrimination she complained to them about in person and in an email. Shea even went so far as to threaten adverse action would result due to her complaint.

68.  The termination letter was an illegally fabricated document having a forged signature. Serrano is the one who requested that the Plaintiff be terminated and the termination letter be drafted for service to her. Alia Razzaq provided it to them. In addition to what he did being outside the scope of his employment, being against the law, against established court procedure, and against the court officer collective bargaining agreement, the contents of the termination letter were not in compliance with New York State Department of Labor laws.

69.  As a testament to the illegality of what happened to the Plaintiff, UCS was bound by N.Y. Labor Law, § 195(6), which requires all employers to provide written notice to discharged employees, stating effective date of termination. The notice must also provide the exact date that any employee benefits, such as health, accident, and life insurance will cease, 12 N.Y.C.R.R. § 472.8 which requires all employers to provide notice, at the time of separation, of the employee's right to file an application for

unemployment benefits, and N.Y. Labor Law § 191, which requires employers to issue a final paycheck to departing employees on or before the next regularly scheduled pay date. Unused accruals must be paid out at termination unless the employer has a written policy specifically stating that vacation pay is forfeited upon termination. None of this was done. And the Plaintiff was completely taken by surprise due to there being no warning or notice that this termination would occur.

70.  Procedures set forth in the court officer collective bargaining agreement were also disregarded. Article 24.2 states that "An officer or employee against whom removal or other disciplinary action is proposed shall have written notice thereof and the reasons therefore, shall furnish a copy of the charges preferred against him/her and shall be allowed at least eight days for answering the same in writing. Service of a copy of the charges shall be made by certified mail, return receipt requested. The Union shall be advised by certified mail, return receipt requested, of the name and work location of the officer or employee against whom charges have been preferred. The charges shall be made by the Deputy Chief Administrative Judge (New York City Courts)..."

71. So to recap, without notice at the end of the workday Tawya Young and Frank Shea, two first line court officer supervisors at KCC, had no legal right in any way to call the Plaintiff into a meeting, hand her an illegally fabricated document having a forged signature, and then say "It happened" in the act of firing her. Both of them then demanded that she turn over all of her job related property to them to include her two 9mm service weapons. The Plaintiff was then escorted down the elevator to depart the courthouse. Shea was true to his word when he threatened the Plaintiff that she would

". . . have a problem. . ." by not recanting true statements she made in an email she sent to him and Major Serrano.

72. Agents of the Defendants deliberately tried to deceive and force the Plaintiff to go through the State legal system, which they control, in order for her to regain her employment, making them in one way or another accomplices to this unlawful termination in both their individual and official capacities. They have been disingenuous and unfair by deliberately mishandling her cases, and violating her right to due process. Legal action shouldn't even be required. The primary job description of a court officer is security, not making a determination to discharge a UCS employee - that's not part of the job description, because it is not their job. Even with all of the evidence that exists against the Defendants of engaging in unlawfulness the Acting Chief Administrative Judge has not reinstated the Plaintiff back into her job. In essence the primary decision makers of the UCS are defending criminals who are disguised as peace officers.

73. As a proximate result of the actions and conduct described hereinabove the Plaintiff has been damaged in an amount according to proof at the time of trial, and seeks all relief allowable by law including without limitation double back pay, injunctive and declaratory relief, make-whole relief, civil penalties, litigation costs, and expert witness fees.

74. Wherefore Plaintiff prays for relief as stated in pertinent part hereinafter.

## **FOURTH CAUSE OF ACTION**

**(Discrimination and Retaliation In Violation of Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. 2000e, et seq, NYSHRL, NYCHRL, against the UCS,**

**Honorable Janet DiFiore, Honorable Peter P. Sweeney, Charles A. Small, Major David Serrano, Major Tawya Young, Sergeant Francis (AKA Frank Shea), et al.**

75. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

76. At all material times Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. 2000e, et seq, was in effect and binding on the Defendant. It states that it is illegal to discriminate against someone (applicant or employee) because of that person's race, color, religion, sex (including gender identity, sexual orientation, and pregnancy), national origin, age (40 or older), disability or genetic information. It is also illegal to retaliate against a person because he or she complained about discrimination, filed a charge of discrimination, or participated in an employment discrimination investigation or lawsuit. The law forbids discrimination in every aspect of employment.

77. The U. S. Department of Justice (DOJ), Civil Rights Division, has issued a Notice of Right to Sue.

78. The Plaintiff is a black woman who is also a uniformed service member. The UCS, the court officer Union, and her supervisors had knowledge of the Plaintiff's protected class. Along with two other officers, a white male, and a white female, the Plaintiff was directly involved in an incident on March 11th, 2019, and was instrumental in leading the incident to a safe end. The leadership, specifically Serrano and Young, were aware of her role, because both separately thanked the Plaintiff for what she had done. The Plaintiff was surprised to learn that the incident report was altered to downplay her

and the other woman's role, which is sex and gender discrimination. However, the other woman and the male were scheduled to receive awards for their contributions, and the Plaintiff was not, which is race and color discrimination. The Plaintiff asked her Union delegate, Sergeant Frank Shea, why had she not been nominated for an award as the other two officers directly involved in the incident were? She did not get an acceptable response from Shea or from the Union at large. The Plaintiff followed up with her inquiry about the award in an email to Serrano and Shea outlining her displeasure about what had taken place, specifically the incident report having been altered, and having been discriminated against. Thereafter a series of incidents occurred in retaliation: she was assigned to undesirable posts within the courthouse that other officers rejected, Shea threatened her on behalf of Serrano due to her email, the December 10th meeting was held for no other reason but to harass her, and as a precursor to her unlawful discharge, then ultimately Serrano, Young, and Shea successfully carried out their plan and terminated her employment.

79. After the shock of what happened dissipated, the Plaintiff recounted what had taken place. She knew that court officers did not have the authority to discharge her from her employment, particularly not in the way in which it was executed. It was beyond the scope of the duties written in their job description. What they did was egregious. She also noticed that the termination letter she received had a signature that was inauthentic, and the stationary it was printed on was also highly questionable. In addition to that, she realized the contents of the letter did not comply with NYS Department of labor laws, so she embarked on a lawsuit. Even after the Plaintiff took legal action to fight her unlawful termination, the Defendants ignored adhering to New

York Laws CVP – Civil Practice Law & Rules in processing and adjudicating her case. If, in fact, Judge Silver made the determination to end the Plaintiff's court officer career, then the law governing the Plaintiff's case follows:

NY CPLR § 506 (2014):

## WHERE SPECIAL PROCEEDING COMMENCED

"(b) Proceeding against body or officer.   A proceeding against a body or officer shall be commenced in any county within the judicial district where the respondent made the determination complained of or refused to perform the duty specifically enjoined upon him by law, or where the proceedings were brought or taken in the course of which the matter sought to be restrained originated, or where the material events otherwise took place, or where the principal office of the respondent is located, except that

1. a proceeding against a justice of the supreme court or a judge of a county court or the court of general sessions shall be commenced in the appellate division in the judicial department where the action, in the course of which the matter sought to be enforced or restrained originated, is triable, unless a term of the appellate division in that department is not in session, in which case the proceeding may be commenced in the appellate division in an adjoining judicial department."

80.   Judge Silver was the DCAJ for New York City Courts and a Supreme Court Justice. In that role one of the justices he once supervised, Judge Peter P. Sweeney, reviewed the Plaintiff's special proceeding, an Article 78, in a lower court, and ruled to have it dismissed even with the OCA defaulting. They did not adhere to the established Part rules of the court or any law as it applies to that type of case, specifically the Article cited above of the CPLR or CPLR 7801-7806. The Plaintiff ventures to say, there is nowhere in the world where a subordinate would overrule his superior or former superior or even afforded the opportunity to do so. The Plaintiff was never told why this was done. Even if the Article 78 should have been commenced in New York County, it should have still been reviewed in the Appellate Division, First Judicial Department, and not in a lower court. Judge Sweeney having reviewed the Plaintiff's case resulted in the Plaintiff believing her case was intentionally mishandled as part of the discrimination, retaliation and conspiracy that continues to date, thus the continuing violation doctrine would apply here.

81. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

82. Defendant's actions were willful, malicious, fraudulent and oppressive, and committed with the wrongful intent to injure the Plaintiff and in conscious disregard of the Plaintiff's rights.

83. Wherefore the Plaintiff seeks relief as set forth below including litigation fees and costs.

## FIFTH CAUSE OF ACTION

**(Retaliation In violation of Section 15(a)(3) of the Fair Labor Standards Act) against the UCS, Honorable Janet DiFiore, Honorable Peter P. Sweeney, Charles A. Small, Major David Serrano, Major Tawya Young, Sergeant Francis (AKA Frank Shea).**

84.  As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

85.  At all material times section 15(a)(3) of the Fair Labor Standards Act was in effect and binding on the Defendant. It states that it is a violation for *any person* to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

86. The U.S. Department of Labor also mandates that "Any employee who is "discharged or in any other manner discriminated against" because, for instance, he or she has filed a complaint or cooperated in an investigation, may file a retaliation complaint with the Wage and Hour Division or may file a private cause of action seeking appropriate remedies including, but not limited to, employment, reinstatement, lost wages and an additional equal amount as liquidated damages."

87. The Plaintiff is a black woman and also a uniformed service member. The UCS, the court officer Union, and her supervisors had knowledge of the Plaintiff's

protected class. Along with two other officers, a white male, and a white female, the Plaintiff was directly involved in an incident on March 11th, 2019, and was instrumental in leading the incident to a safe end. The leadership, specifically Serrano and Young, were aware of her role, because both separately thanked the Plaintiff for what she had done. The Plaintiff was surprised to learn that the incident report was altered to downplay her and the other woman's role, which is sex and gender discrimination. However, the other woman and the male were scheduled to receive awards for their contributions, and the Plaintiff was not, which is race and color discrimination. The Plaintiff asked her Union delegate, Sergeant Frank Shea, why had she not been nominated for an award as the other two officers directly involved in the incident were? She did not get an acceptable response from Shea or from the Union at large. The Plaintiff followed up with her inquiry about the award in an email to Serrano and Shea outlining her displeasure about what had taken place, specifically the incident report having been altered, and being discriminated against. Thereafter a series of incidents occurred in retaliation: she was assigned to undesirable posts within the courthouse that other officers rejected, Shea threatened her due to her email, the December 10th meeting was held for no other reason but to harass her, and as a precursor to her unlawful discharge, then ultimately Serrano, Young, and Shea successfully carried out their plan to terminate her employment.

88. After the shock of what happened dissipated, the Plaintiff recounted what had taken place. She knew that court officers did not have the authority to discharge her from her employment, particularly not in the way in which it was executed. It was beyond the scope of the duties written in their job description. What they did was

egregious. She also noticed that the termination letter she received had a signature that was inauthentic, and the stationary it was printed on was also highly questionable. In addition to that, she realized the contents of the letter did not comply with NYS Department of labor laws, so she embarked on a lawsuit. Even after the Plaintiff took legal action to fight her unlawful termination, the Defendants ignored adhering to New York Laws CVP – Civil Practice Law & Rules in processing and adjudicating her case. If, in fact, Judge Silver made the determination to end the Plaintiff's court officer career, then the law governing the Plaintiff's case follows:

NY CPLR § 506 (2014) :

**WHERE SPECIAL PROCEEDING COMMENCED**

**"(**b) Proceeding against body or officer.   A proceeding against a body or officer shall be commenced in any county within the judicial district where the respondent made the determination complained of or refused to perform the duty specifically enjoined upon him by law, or where the proceedings were brought or taken in the course of which the matter sought to be restrained originated, or where the material events otherwise took place, or where the principal office of the respondent is located, except that

1.  a proceeding against a justice of the supreme court or a judge of a county court or the court of general sessions shall be commenced in the appellate division in the judicial department where the action, in the course of which the matter sought

to be enforced or restrained originated, is triable, unless a term of the appellate division in that department is not in session, in which case the proceeding may be commenced in the appellate division in an adjoining judicial department."

89. Judge Silver was the DCAJ for New York City Courts and a Supreme Court Justice. In that role one of the justices he once supervised, Judge Peter P. Sweeney, reviewed the Plaintiff's special proceeding, an Article 78, in a lower court, and ruled to have it dismissed even with the OCA defaulting. They did not adhere to the established Part rules of the court or any law as it applies to that type of case, specifically the Article cited above of the CPLR or CPLR 7801-7806. Judge Sweeney having reviewed the Plaintiff's case in a lower court is part of the discrimination, retaliation, and conspiracy against the Plaintiff that continues to date, thus the continuing violation doctrine applies here.

90. As a proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

91. Defendant's actions were willful, malicious, fraudulent and oppressive, and committed with the wrongful intent to injure the Plaintiff and in conscious disregard of the Plaintiff's rights.

92. Wherefore Plaintiff seeks relief as set forth below including litigation fees and costs.

## SIXTH CAUSE OF ACTION

## (42 U.S.C. §1983: 14th Amendment in Violation of Due Process and Equal Protection Clause, NYCHRL, and NYSHRL - Retaliation against the UCS, Honorable Janet DiFiore, Alia Razzaq, Major David Serrano, Major Tawya Young & Sergeant Frank Shea)

93.  As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

94.  Without any notice, at around 4:45 PM on February 18th, 2020, acting on their own accord and under the color of State law, Lieutenant Tawya Young and Sergeant Frank Shea abused their status and rank as first line supervisors, at Kings Civil Court, and unlawfully discharged the Plaintiff from her UCS court officer position. They presented to her an illegally fabricated document having a forged signature, appearing to be a termination letter from the Deputy Chief Administrative Judge for New York City Courts, who at that time was Judge George J. Silver, in the act of terminating her from her court officer position. They committed this act based on false allegations Major Serrano, the court officer commander of KCC, fabricated.

95.  Foremost, under no circumstances are court officers of any rank authorized to discharge a UCS employee, particularly not one who is the employee's Union delegate. It is beyond the scope of their employment. Their actions were retaliatory, stemming from disparate treatment discrimination that the Plaintiff complained to them about. This of course created a hostile work environment. Given that this unlawful act

did take place, the Plaintiff was not given notice, and denied both her pre and post Loudermill meetings. This ultimately deprived the Plaintiff of the due process requirement that must be provided to a public employee prior to removing or impacting the employment property right. Their actions also took away equal protections for the Plaintiff under that right. This unlawful discharge Young and Shea carried out was also in violation of the New York State Court Officer Association Collective Bargaining Agreement.

96. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

## SEVENTH CAUSE OF ACTION

## (Title 18, U.S.C. Section 242: 14th Amendment In Violation of Due Process and Equal Protection Clause against the Honorable Janet DiFiore, Alia Razzaq, Major David Serrano, Major Tawya Young & Sergeant Frank Shea)

97. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

98. Without any notice, at around 4:45 PM on February 18th, 2020, acting on their own accord and under the color of State law, Lieutenant Tawya Young and Sergeant Frank Shea abused their status and rank as first line supervisors, at Kings Civil Court, and unlawfully discharged the Plaintiff from her UCS court officer position.

They presented to her an illegally fabricated document having a forged signature, appearing to be a termination letter from the Deputy Chief Administrative Judge for New York City Courts, who at that time was Judge George J. Silver, in the act of terminating her from her court officer position. They committed this act based on false allegations Major Serrano, the court officer commander of KCC, fabricated.

99. Foremost, under no circumstances are court officers of any rank authorized to discharge a UCS employee, particularly not one who is the employee's Union delegate. It is beyond the scope of their employment. Their actions were retaliatory, stemming from disparate treatment discrimination that the Plaintiff complained to them about. This of course created a hostile work environment. Given that this unlawful act did take place, the Plaintiff was not given notice, and denied both her pre and post Loudermill meetings. This ultimately deprived the Plaintiff of the due process requirement that must be provided to a public employee prior to removing or impacting the employment property right. Their actions also took away equal protections for the Plaintiff under that right. This unlawful discharge Young and Shea carried out was also in violation of the New York State Court Officer Association Collective Bargaining Agreement.

100. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

## EIGHTH CAUSE OF ACTION

## (42 U.S.C. §1983 (against Major Serrano, Major Tawya Young, and Sergeant Frank Shea for 1st Amendment Rights Violation)

101. As a separate and distinct cause of action, the the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

102. After the Plaintiff learned an incident report for an incident she and two other officers were directly involved in was written to deliberately downplay the women's contributions, she made an effort to understand how and why that took place by speaking to Sergeant Frank Shea, who is a first line supervisor at KCC, and was the Plaintiff's Union delegate. He had knowledge of the incident, how it unfolded, and the outcome. He knew this because right after the incident ended the Plaintiff and the two other officers who were directly involved took the handcuffed subject to Operations and told the leadership what had taken place. On two separate occasions Major Serrano and Lieutenant Young thanked the Plaintiff for her contribution. Lieutenant Young even prepared the Plaintiff to testify before a grand jury about what she witnessed and had done.

103. When Shea did not offer a reasonable explanation the Plaintiff sent him and Major Serrano an email expressing her displeasure. As the Plaintiff's Union Steward, instead of Sergeant Shea addressing the gender discrimination she described in the email, he relayed a message from Serrano, in mid-November 2019 at a meeting he scheduled with the Plaintiff, threatening that she should recant the statements from the

email or she would ". . . have a problem. . . ." The Plaintiff refused to comply with Shea's threat. In fact, during the meeting she took her complaint even further and told Shea she felt she was discriminated against due to her gender, color, and race. Even that did not move him or the leadership to rectify what was done, so the Plaintiff composed a second email, but did not send it fearing retaliation. That did not matter, because true to his word, on February 18th, 2020, Young and Shea unlawfully discharged the Plaintiff from her employment as a court officer to retaliate against her, and for using her protected right to free speech.

104. Unlawfully discharging the Plaintiff due to her protected characteristics and for using her protected right to free speech to talk and write about discrimination she suffered goes against what the justice system stands for in this country. The UCS employs a large number of women who are black and brown. Many of the litigants who court employees interact with on a day-to-day basis are people of color from the surrounding areas of where the courts in which they work are located. The subject of the incident report that was altered, who eventually served a jail sentence for what happened on March 11th, 2019, is a person of color. For Serrano, Young and Shea to retaliate against the Plaintiff due to her protected right to free speech concerning these matters is unconstitutional, against public policy, and against the court systems equal justice initiative they have recently implemented.

105. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

# NINTH CAUSE OF ACTION

## (Title 18, U.S.C. Section 242 against Major David Serrano, Major Tawya Young, and Sergeant Frank Shea for 1st Amendment Rights Violation)

106.  As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

107.  After the Plaintiff learned an incident report for an incident she and two other officers were directly involved in was written to deliberately downplay the women's contributions, she made an effort to understand how and why that took place by speaking to Sergeant Frank Shea, who is a first line supervisor at KCC, and was the Plaintiff's Union delegate. He had knowledge of the incident, how it unfolded, and the outcome. He knew this because right after the incident ended the Plaintiff and the two other officers who were directly involved took the handcuffed subject to Operations and told the leadership what had taken place. On two separate occasions Major Serrano and Lieutenant Young thanked the Plaintiff for her contribution. Lieutenant Young even prepared the Plaintiff to testify before a Grand Jury about what she witnessed and had done.

108.  When Shea did not offer a reasonable explanation the Plaintiff sent him and Major Serrano an email expressing her displeasure. As the Plaintiff's Union Steward, instead of Sergeant Shea addressing the gender discrimination she described in the email, he relayed a message from Serrano, in mid-November 2019 at a meeting he scheduled with the Plaintiff, threatening that she should recant the statements from the

email or she would ". . . have a problem. . . ." The Plaintiff refused to comply with Shea's threat. In fact, during the meeting she took her complaint even further and told Shea she felt she was discriminated against due to her gender, color, and race. Even that did not move him or the leadership to rectify what was done, so the Plaintiff composed a second email, but did not send it fearing retaliation. That did not matter, because true to his word, on February 18th, 2020, Young and Shea unlawfully discharged the Plaintiff from her employment as a court officer to retaliate against her, and for using her protected right to free speech.

109. Unlawfully discharging the Plaintiff due to her protected characteristics and for using her protected right to free speech to talk and write about discrimination she suffered goes against what the justice system stands for in this country. The UCS employs a large number of women who are black and brown. Many of the litigants who court employees interact with on a day-to-day basis are people of color from the surrounding areas of where the courts in which they work are located. The subject of the incident report that was altered, who eventually served a jail sentence for what happened on March 11th, 2019, is a person of color. For Serrano, Young and Shea to retaliate against the Plaintiff due to her protected right to free speech concerning these matters is unconstitutional, against public policy, and against the court systems equal justice initiative they have recently implemented.

110. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

## TENTH CAUSE OF ACTION

### (42 U.S.C. §1983: (14th Amendment In Violation of Due Process and Equal Protection Clause) against Judge Peter P. Sweeney)

111.  As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

112.  The Fourteenth Amendment Equal Protection Clause states, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

113.  Due to Lieutenant Young and Sergeant Shea serving a termination letter to the Plaintiff on February 18th, 2020, she believed an Article 78 to appeal the determination, that was outlined thereon, would give her the opportunity to be reinstated into her court officer position. She knew from the beginning the allegations against her were false. After examining all of the facts, and evidence and understanding the applicable laws, rules, and procedures as they apply to her discharge, she can prove that everything about her termination was illegal. Starting with court officers isolating her at the end of the workday from any other authority, and presenting to her a letter that was illegally fabricated and forged with a signature stamp. In her attempt to have justice she pursued legal action. The resulting proceeding turned out not to be real either. Under the color of State law, Judge Sweeney presided over that case only to dismiss it knowing it was just a way to continue covering up the illegality of the Plaintiff's discharge.

114. There was no just cause for the Plaintiff to be terminated to begin with. Had the determination to end the Plaintiff's employment really been rendered by the DCAJ, Judge George J. Silver at the time, and the termination letter authentic, then in accordance with New York Laws CVP – Civil Practice Law & Rules, Article 5 § 506 (b) 1, the original jurisdiction for the Plaintiff's case is the Appellate Division 2nd Department.

115. There was no reason for Judge Sweeney to have reviewed the Plaintiff's case in a lower court, and render a decision to dismiss it other than to protect others in the court system from being held accountable for this unlawful termination, and to take part in retaliating against her. In accordance with the law he simply did not have jurisdiction. Every law and established court procedure was disregarded in this undertaking by everyone involved in protecting their friends in the court system who were accomplices to this unlawful termination, thereby hindering justice for the Plaintiff in violation of her Fourteenth Amendment right to due process.

116. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

## (Title 18, U.S.C., SECTION 242: (14th Amendment Violation of Due Process And Equal Protection Clause) against Judge Peter P. Sweeney)

117. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference

into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

118. The Fourteenth Amendment Equal Protection Clause states, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

119. Due to Lieutenant Young and Sergeant Shea serving a termination letter to the Plaintiff on February 18th, 2020, she believed an Article 78 to appeal the determination, that was outlined thereon, would give her the opportunity to be reinstated into her court officer position. She knew from the beginning the allegations against her were false. After examining all of the facts, and evidence and understanding the applicable laws, rules, and procedures as they apply to her discharge, she can prove that everything about her termination was illegal. Starting with court officers isolating her at the end of the workday from any other authority, and presenting to her a letter that was illegally fabricated and forged with a signature stamp. In her attempt to have justice she pursued legal action. The resulting proceeding turned out not to be real either. Under the color of State law, Judge Sweeney presided over that case only to dismiss it knowing it was just a way to continue covering up the illegality of the Plaintiff's discharge.

120. There was no just cause for the Plaintiff to be terminated, but had the determination to end the Plaintiff's employment really been rendered by the DCAJ, Judge George J. Silver at the time, and the termination letter authentic, then in accordance with New York Laws CVP – Civil Practice Law & Rules, Article 5 § 506 (b) 1, the original jurisdiction for the Plaintiff's case is the Appellate Division 2nd Department.

121.  There was no reason for Judge Sweeney to have reviewed the Plaintiff's case in a lower court, and render a decision to dismiss it other than to protect others in the court system from being held accountable for this unlawful termination, and to take part in retaliating against her. In accordance with the law he simply did not have jurisdiction. Every law and established court procedure was disregarded in this undertaking by everyone involved in protecting their friends in the court system who were accomplices to this unlawful termination, thereby hindering justice for the Plaintiff in violation of her Fourteenth Amendment right to due process.

122. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

## TWELFTH CAUSE OF ACTION

### (18 U.S.C. Section 1341; Mail Fraud against the UCS, Dennis Quirk & Alia Razzaq)

123.  As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

124. Title 18 USC § 1341 defines the crime of mail fraud under federal law, and provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money.... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the

Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."

125.  The Plaintiff has evidence that Alia Razzaq, the Chief Clerk at Manhattan Civil Court who works closely with the DCAJ, assisted in obtaining and then provided the illegally fabricated termination letter that she received to Lieutenant Young and Sergeant Shea. This letter is the reason why the Plaintiff was deceived and unlawfully discharged from her employment with the UCS, essentially being defrauded out of her employment property right.

126.  To ensure the plan remained viable, after the Plaintiff commenced a lawsuit to be reinstated into her job, two letters appearing to be from Judge Silver were supposedly sent to her through the United States Postal Service (Exhibit H). The word "supposedly" is used, because the letter the Plaintiff received, coincidently on the very same day her index number for her Article 78 arrived in the mail, indicates a duplicate letter was sent to her former address in Hawaii. Since the Plaintiff has evidence proving that the DCAJ did not make the determination to end her employment, and Serrano did, it is safe to conclude that Judge Silver did not write the letters, or authorize anyone to compose them on his behalf. That being the case, he did not sign the letters either. The signature is a forgery, another unauthorized use of his signature stamp.

127.  For the Plaintiff to have pursued an Article 78 posed a problem for the conspirators of this unlawful termination. First, it alerted authorities within the UCS of what they had done. Secondly, they knew her case couldn't be adjudicated (as it wasn't)

in accordance with the law, due to non-judicial court personnel making the determination to end her employment. Evidence shows that Judge Silver had no idea this termination even took place. This is why Judge Sweeney reviewed the Plaintiff's Article 78, and it wasn't sent to the Appellate Division, as by law it should have, had a supreme court justice made the determination to end the Plaintiff's employment.

128.  The Plaintiff interpreted the letter as an effort to dissuade her from pursuing a lawsuit. Quirk and Razzaq are the only two individuals carbon copied, so it is safe to conclude they are the individuals responsible for writing the letter, and the other - if one was actually sent, to Hawaii. The letters having been sent through the postal system makes this a crime of mail fraud.

129. As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has sustained and continues to endure pain and suffering, and extreme and severe mental anguish and emotional distress; and the Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. The Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

130. The Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, the Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## THIRTEENTH CAUSE OF ACTION

## (18 U.S.C. Section 1341; Mail Fraud against the UCS, Honorable DiFiore and Charles A. Small)

131. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

132. Title 18 USC § 1341 defines the crime of mail fraud under federal law, and provides in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money.... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both."

133. Due to waiting an extraordinarily long period of time to have her case reviewed in the proper venue, which should have been in New York Supreme Court Appellate Division – Second Department, well after she submitted the appropriate forms, and paid the required fees, the Plaintiff contacted Judge Janet Difiore – the Chief Judge for the UCS at that time, for assistance. She in turn received a mailed letter from Charles A. Small, the Chief Clerk for Civil Matters at Kings County Supreme Court, on behalf of the Chief Judge. The letter illustrates how authorities within the UCS made a

concerted effort to try to deceive the Plaintiff into believing her case was being appropriately processed in accordance with the law, and standard operating procedure.

134. After examining the facts, and evidence the Plaintiff realized that on the Defendant's side everyone that came into contact with her case learned at some point that Serrano, Young, Shea, Quirk, and Razzaq - court officers, and a clerk unlawfully discharged her, and that legal action on her part to be reinstated into her court officer position would be fruitless. The point of her being unlawfully terminated is to keep her unemployed from the UCS. Crimes were committed, and the persons involved don't want that revealed.

135. Receiving such a letter from the court system falls under the crime of mail fraud, because the intention of the letter was to assist the perpetrators of these various crimes in continuing their scheme to defraud the Plaintiff out of her employment, not realize justice, and not have equal protections of the law.

136. As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has sustained and continues to sustain physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; and the Plaintiff has suffered and continued to suffer a loss of earnings and other employment benefits. The Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

137. The Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, the Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## FOURTEENTH CAUSE OF ACTION

## (42 U.S. Code § 2000e–2 - Unlawful Employment Practices) against the UCS, the NYSCOA, and Sergeant Francis (AKA Frank) Shea.

138. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

## # (c) Labor organization practices

139. Due to the Plaintiff complaining to her Union delegate Sergeant Frank Shea concerning disparate treatment discrimination, he along with Lieutenant Tawya Young, another first line court officer supervisor at Kings Civil Court, retaliated by unlawfully terminating her. Without prior notification, and in the absence of the court officer Commander for the location, Major Serrano, the Plaintiff was isolated from any other UCS authority at the end of the workday on February 18th, 2020, and given an illegally fabricated termination letter complete with a forged signature. Young then escorted her to the courthouse lobby to depart the building.

140. Instead of the Union addressing, and mitigating the Plaintiff's concerns, Shea actually threatened that she would ". . . have a problem. . . " due to refusing, at his request, to recant what she wrote in an email to him and Serrano concerning the discrimination.

141. As a proximate result of the Defendant's actions, the Plaintiff has suffered and continues to suffer substantial losses of earnings and other employment benefits

and has suffered and continues to suffer severe emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

## FIFTHTEENTH CAUSE OF ACTION

## (Defamation, Defamation Per Se and Compelled Self-Defamation) the UCS, Major Serrano, Alia Razzaq, Dennis Quirk, Major Tawya Young, Sergeant Francis (AKA Frank) Shea

142. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

143. Aside from the December 10th Performance Enhancement Memorandum, and the termination letter the Plaintiff received being untrue, and libelous, on information and belief, the Defendant through its agents needlessly made defamatory statements about the Plaintiff to numerous persons including coworkers, and other court personnel. Information as to the specific identity of the persons publishing the relevant statements, and the recipients of the statements is in the hands of the Defendant and other third parties, and will be subject to discovery.

144. The Plaintiff does not presently have knowledge of the exact wording of the defamatory statements at issue, other than as alleged hereinabove, such information being in the hands of the Defendant and third parties. On information and belief, the general substance of these defamatory statements includes false express and implied assertions also including insinuation and innuendo that the Plaintiff's performance was

deficient, that she failed to perform her duties in a professional manner, that she was incompetent.

145. Such assertions were intended as statements of fact and not opinion.

146. The precise dates of these publications are not presently known to the Plaintiff, as the information is in the hands of the Defendant. However, the Plaintiff is informed and believes the publications were published and foreseeably republished earlier than November 2019, and after that date, to first cause, and then justify, the Plaintiff's wrongful and illegal termination.

147. These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendant, and each of them. The Plaintiff is informed and believes that the negligent, reckless, and intentional publications by the Defendant, and each of them, were and continue to be, foreseeably published and republished by the Defendant, their agents and employees, recipients, and in the community. The Plaintiffs hereby seek damages for these publications and all foreseeable republications discovered up to the time of trial.

148. The Plaintiff is informed, believes and fears that these false, defamatory, and defamatory per se statements, including statements regarding Plaintiff's occupational, business, professional, and personal reputation, will continue to be published by Defendant, and each of them, and will be foreseeably republished by its recipients, all to the ongoing harm and injury to the Plaintiff's occupational, business, professional, and personal reputation. The Plaintiff also seeks redress in this action for all foreseeable re-publications, including her own compelled self- publication of these defamatory statements.

149.  The defamatory meaning of all of the above-described false and defamatory statements and their reference to the Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to the Defendant, and each of them, but unknown to Plaintiff at this time.

150.  None of Defendant's defamatory publications and statements against Plaintiff referenced above are true. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by the Defendant, and each of them, and foreseeably republished by recipients of the Defendant's publications, thereby causing additional injury and damages for which the Plaintiff seeks redress by this action.

151.  Each of these false, defamatory, and defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse, since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure the Plaintiff in order to justify the illegal and cruel actions of the Defendant, to cause further damage to the Plaintiff's professional and personal reputation, to cause her to be fired, to justify her firing and to destroy her credibility in the legal and law communities.

152.  The above complained-of publications by the Defendant were made with hatred and ill will towards the Plaintiff and the design and intent to injure the Plaintiff, the Plaintiff's good name, her reputation, employment and employability. The Defendant published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure

the Plaintiff and destroy her reputation. Therefore, no privilege existed to protect the Defendant from liability for any of these aforementioned publications or republications.

153.   As a proximate result of the publication and republication of these defamatory statements, and each of them, the Plaintiff has suffered injury to her personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to the Plaintiff's economic, emotional, and general damage in an amount according to proof.

154.   The Defendant committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring the Plaintiff, for an improper and evil motive amounting to malice (as described above), and with a reckless and conscious disregard of the Plaintiff's rights. All actions of the Defendant, its agents and employees, herein alleged were known, ratified and approved by the Defendant. The Plaintiff thus is entitled to recover punitive and exemplary damages from the Defendant, for these wanton, obnoxious, and despicable acts in an amount according to proof at time of trial.

## SIXTEENTH CAUSE OF ACTION

## (Intentional Infliction of Emotional Distress) against the UCS, Major Serrano, Alia Razzaq, Major Tawya Young, Sergeant Francis (AKA Frank) Shea

155.   As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by

reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

156.   The Defendant engaged in outrageous conduct towards the Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, the Plaintiff to suffer severe emotional distress, and with wanton and reckless disregard for the injurious result to Plaintiff, as set forth hereinabove. When Serrano, Young, Shea, Quirk, and Razzaq decided to undertake this scheme to unlawfully remove the Plaintiff from her position they had to have known, as any rationally thinking adult would, that their actions would cause emotional distress, therefore what they did was intentional.

157.   The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of the Defendant. The above-described conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. This conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from supervisors, and coworkers.

158.   As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has sustained and continues to sustain pain and suffering, extreme and severe mental anguish and emotional distress; the Plaintiff has incurred and will continue to incur medical expenses for treatment, and for incidental medical expenses; and the Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits. The Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

159. The Plaintiff alleges that the Defendant and all who were involved with handling her case within the UCS committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring her, and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of her rights.

## SEVENTEENTH CAUSE OF ACTION

## (Breach of Implied Covenant of Good Faith and Fair Dealing) the UCS, Honorable Janet DiFiore, Honorable Tamiko Amaker, the NYSCOA, Sergeant Francis (AKA Frank) Shea

160. As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

161. As a Union member the Plaintiff's Union Steward should have fought against the ploy to illegally remove her from her position. Not only did Frank Shea threaten the Plaintiff he actively participated in this unauthorized, unlawful discharge. He breached his duty of fair representation on behalf of the Plaintiff.

162. The Plaintiff was unlawfully discharged without just cause, based on false allegations, and without regard or consideration of any law, rule, regulation, standing court procedure, protocol, or any article in the court officer collective bargaining agreement. Authorities within the court system who hold the authority to reinstate the Plaintiff have failed to do so.

## EIGHTEENTH CAUSE OF ACTION

## (Conspiracies to Interfere with Civil Rights 42 U.S.C.§1983, 1985 (1)(2)&(3) and 1986 - Failure to prevent Conspiracy) The UCS, Honorable Janet DiFiore, Honorable Tamiko Amaker, Honorable Peter P. Sweeney, Serrano, Young, Shea, Quirk, Razzaq, Small, et al

163.  As a separate and distinct cause of action, the Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

164. The Defendants in one way or another conspired to unlawfully discharge the Plaintiff from her job, assisted with it, were complicit, and/or interfered with her civil rights, and obstructed justice. This includes Serrano, Young, and Shea devising a plan to fire the Plaintiff, with the help of Razzaq, and other non-judicial court personnel. Those individuals then created a fraudulent document that enabled Young, and Shea, who was her Union delegate, to secretly remove her from her employment in order to hide the disparate treatment discrimination they committed against her. They did this, so that they would not get into trouble, and to retaliate against her. All involved acted outside of the scope of their employment and in their own personal interest. There is no justification for what they did. Not only did they lack the authority for their actions, they acted on their own accord and under the color of law in their individual, and official capacities. What they did was criminal. From the start, there was no just cause for the Plaintiff's termination. Since they did carry out this unlawful termination however, those individuals denied her of the requisite Loudermill meetings, the Fourteenth Amendment

Equal Protection Clause, and other rights outlined in the court officer Union collective bargaining agreement. The court officer Union failed at representing and protecting the Plaintiff from this unlawful act as well.

165. Judge DiFiore, Judge Sisi (as the DCAJ for his jurisdiction), and Judge Silver (as the DCAJ for New York City courts) could have intervened by calling out the injustice when they realized it happened, but they didn't. They raised no issue, and went along with what was obviously unlawful, making them complicit in the conspiracy. By wrongfully reviewing the Plaintiff's case Judge Sweeney was a direct accomplice to the conspiracy. He acted within both his individual and official capacities.

166. Court employees who learned of the unlawful termination, and became involved furthered the conspiracy by committing mail fraud, and by intentionally assigning the Plaintiff's Article 78 to Judge Sweeney to conduct a pseudo review of her case. The case was dismissed even though the Defendant defaulted.

167. Judge DiFiore, as the Chief Judge, in her individual, administrative, and official capacities is largely responsible for what can rightfully be called a conspiracy. Aside from her not calling for an internal investigation on the matter, or simply asking Judge Silver what he knew, she did not stop this situation before it worsened. Wrongdoing was committed. Established rules, laws, and court procedures were violated. Their actions severely impacted the Plaintiff in a negative way. Reinstating her, and in some way penalizing the wrongdoers would have been fair. What was the purpose of Judge DiFiore requesting Mr. Small's involvement? Why didn't he send the Plaintiff's case to the Appellate Division of either the First or Second Departments? That's what the law dictates, if Judge Silver made the determination to terminate the

Plaintiff's employment. But the evidence shows that is not what actually happened. The Plaintiff's unlawful discharge was based on a document containing falsehoods that Maj Serrano fabricated in order to eradicate the problem he had, which was the disparate treatment discrimination she complained of, and to retaliate against her for not recanting those statements she made about the discrimination in that email she sent to him and Shea. Due to that the Plaintiff's case was ineligible to be reviewed in the Appellate Division of any Department as the original jurisdiction. To be clear, Serrano made the determination, not Judge Silver.

168. Serrano's actions should not have been tolerated since on June 9th, 2020, former U.S. Secretary of Homeland Security Jeh Johnson was appointed Special Advisor on Equal Justice in the Courts by Chief Judge DiFiore to review equal justice and racial bias in the New York State court system. The review found a culture of "toxicity and unprofessionalism" among court officer ranks, and "fear of reporting bias." The report recommended numerous changes in the court system's policies, practices and programs to guide the court system in advancing diversity and inclusion and ensure equal justice under the law." It was reported that Chief Judge DiFiore accepted all of the recommendations and that they would be implemented.

169. In her individual, administrative, or official capacity, the Acting Chief Administrative Judge of the Courts, Honorable Tamiko Amaker, is also complicit in the conspiracy by having the authority to rectify the situation and reinstate the Plaintiff into her court officer position. To date she has not done so. By preventing the Plaintiff from returning to work, the discriminatory and retaliatory behaior UCS employees committed in their individual and official capacities that are outlined in this Complaint are continuing

and ongoing to date. The Plaintiff is still suffering from their actions. Thus the continuing violation doctrine applies here. In essence the UCS on a whole has been negligent in correcting this unlawful termination, and has superior liability. Any UCS employee who has the authority to reinstate the Plaintiff has failed to do so.

170. The Acting Chief Administrative Judge should have knowledge of what happened to the Plaintiff, due to this lawsuit and the Defendants named. Plus the Plaintiff communicated with the OCAs counsel's office on several occasions concerning this matter. They responded on behalf of Chief Judge DiFiore.

171. The plot to carry out the unlawful termination began well before the inquiry the Plaintiff made to her supervisors concerning disparate treatment discrimination. It ended however, with them and other named individuals conspiring against her to unlawfully discharge her from her job, and keep her from her job. Their actions show they made a deliberate effort to cover up the discrimination and the resulting wrongful activities that followed. And finally, to date they continue that effort by preventing her from regaining her job by denying her the equal protections of the laws.

172. The Plaintiff believes and thereon alleges that her protected characteristics along with engaging in a protected activity was a motivating factor in the Defendant's conduct as alleged hereinabove, including terminating her then conspiring against her so that it would be impossible for her to be reinstated into her position.

173. As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has sustained and continues to endure pain and suffering, and extreme and severe mental anguish and emotional distress; and the Plaintiff has suffered and

continues to suffer a loss of earnings and other employment benefits. The Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

174. The Defendant's conduct as described above was willful, despicable, knowing, and intentional; accordingly, the Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff prays for judgment against the Defendant as follows:

1. For compensatory damages, including lost wages, medical benefits and other employment benefits, according to proof;

2. For double back pay with interest;

3. For general, mental and emotional distress damages according to proof;

4. For punitive damages on each cause of action for which they are awardable;

5. For all civil penalties awardable;

6. For an award of interest, including prejudgment interest, at the legal rate;

7. For costs of suit incurred;

8. For injunctive relief: to be reinstated back to her position as a court officer, and receive front pay and time in order to complete 30 years of service, then immediately retired at the rank of major.

9. For such other and further relief as the court deems just and proper.

10. DATED: March 6th, 2023

## 11. DEMAND FOR JURY TRIAL

12. Plaintiff Jahn K. Foy hereby demands a jury trial on all issues so triable.

*Jahn K. Foy*
March 9, 2023

# EXHIBIT A



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

December 28, 2022

Ms. Jahn K. Foy
517 Rogers Ave.
Brooklyn, NY  11225

Re:  EEOC Charge Against New York State Unified Court System, Office of Court Administration
No. 520202100423

Dear Ms. Foy:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:  Title I of the Americans with Disabilities Act of 1990,  42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC

New York State Unified Court System, Office of Court Administration



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

**VIA EMAIL**

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

December 28, 2022

Ms. Jahn K. Foy
517 Rogers Ave.
Brooklyn, NY 11225

Re: EEOC Charge Against New York State Unified Court System, Office of Court Administration
No. 520202100423

Dear Ms. Foy:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC

New York State Unified Court System, Office of Court Administration

# EXHIBIT B

# MEMORANDUM

DATE: 12/10/19

TO: Joseph Minogue, DCCV

FROM: Major David Serrano

Subject: Performance Enhancement meeting with CO Jahn Foy

Employee status: Permanent

## Meeting Information and Background:

On 12/10/2019, at 11:15 AM, CO FOY and I met to discuss lateness issues. Union delegate Frank Shea was present, as well as Lt. Tawya Young. This memorandum will serve as a summary of our discussion.

## Description of the Problem:

As directed, upon reviewing CO Foy's time and leave record from 2/13/19 – 11/29/19, it was noted that on (19) separate occasions during that time period, CO FOY was late for the beginning of her tour, which begins at 9:00 AM daily.

It was noted that, in violation of the stipulation she signed on 2/13/19, CO Foy was late more than (3) times in a four week period. This occurred on two different occasions, and they are as follows:

| | | |
|---|---|---|
| 5/23 – 6/19: | 34 minutes total | 5/23, 5/28, 6/4, 6/13 |
| 5/28 -- 6/24: | 27 minutes total | 5/28, 6/4, 6/13, 6/20 |

## Effect of the Behavior and Supervisor's Expectations:

CO Foy was reminded of the importance of reporting to work on time and that continued lateness would result in further disciplinary action. CO Foy was reminded that she is expected to be at work and on post on time.

## Employee's Response:

CO Foy responded that she was indeed late on those instances and is trying to improve.

## Supervisor's response and the Employee's Response:

I explained that this meeting was being held to encourage positive behavior. I stressed the critical need for CO FOY to have no more instances of lateness and the need to show improvement. I informed CO FOY that I was trying to assist her in finding a way to correct the issue of persistent lateness. I offered to again explore the

idea of her assuming a later work schedule. I reminded her that a UCS-70 would need to be submitted, and if she did so, I would pursue it. I offered CO FOY the opportunity to provide any suggestions as to potential solutions, which she declined.

**Work/Life:**

I reminded CO FOY of the availability of the Work Life Assistance Program.

**Follow-Up Date**

**We will meet again as necessary.**

# EXHIBIT C



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

## MEMORANDUM

To:      Alia Razzaq
         Chief Clerk

From:    Maritza Camacho-Colon

Date:    October 2, 2019

Subject: Jahn K. Foy, NYS Court Officer

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please have the enclosed termination letter served personally upon Officer Foy and have the completed and notarized Affidavit of Personal Service returned to me.

Thank you.

Attachments

# EXHIBIT D



STATE OF NEW YORK
**UNIFIED COURT SYSTEM**
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

**LAWRENCE K. MARKS**
Chief Administrative Judge

**GEORGE J. SILVER**
Deputy Chief Administrative Judge
New York City Courts

February 18, 2020

Jahn K. Foy
NYS Court Officer
Kings County Civil Court
141 Livingston Street
Brooklyn, NY 11201

Dear Officer Foy:

      This is to inform you that pursuant to the terms of the Stipulation of Settlement dated February 7, 2019 ("Stipulation"), you are terminated from your position as a NYS Court Officer, effective close of business February 18, 2020, based upon your violation of the terms set forth in Paragraphs 2, 3 and 4 which authorizes your termination. Since entering into the Stipulation, you have been late twenty-one (21) times, resulting in you being late for more than a total of thirty (30) minutes in a consecutive four week period beginning on May 20, 2019 and ending on June 14, 2019. You were late as follows: May 23, 2019 (8 minutes); May 28, 2019 (11 minutes); June 4, 2019 (1 minute); and June 13, 2019 (14 minutes). Additionally, during another four week period beginning on May 27, 2019 and ending on June 17, 2019, you reported to your assigned post late more than three (3) times in a consecutive four week period as follows: May 28, 2019; June 4, 2019; June 13, 2019 and June 20, 2019

      Very truly yours,

George J. Silver

c:    Alia Razzaq
      Dennis Quirk
      Gloria Rios
      Jose Manuel
      Sonali Mitra
      Daisy Diaz

# EXHIBIT E



www.labor.ny.gov

# Guidelines
## Letter of Termination

The New York State Labor Law provides as follows:

<u>Section 195. Notice and record-keeping requirements</u>

Every employer shall:

6. notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. In no case shall notice of such termination be provided more than five working days after the date of such termination. Failure to notify an employee of cancellation of accident or health insurance subjects an employer to an additional penalty pursuant to section two hundred seventeen of this chapter.

**Albany District**
State Office Campus
Bldg. 12 Room 185A
Albany, NY 12240
(518) 457-2730

**New York City District**
75 Varick Street
7th Floor
New York, NY 10013
(212) 775-3880

**Garden City District**
400 Oak Street
Suite 101
Garden City, NY 11530
(516) 794-8195

**White Plains District**
120 Bloomingdale Road
White Plains, NY 10605
(914) 997-9521

**Buffalo District**
290 Main Street
Room 226
Buffalo, NY 14202
(716) 847-7141

**Rochester**
Sub-District
276 Waring Road
Room 104
Rochester, NY 14609
(585) 258-4550

**Syracuse District**
333 East Washington Street
Room 121
Syracuse, NY 13202
(315) 428-4057

# New York Requirements for Employee Termination

Employees in New York State are presumed to be "at-will," meaning that the employment relationship can be terminated at any time for any reason, absent a law or contractual agreement to the contrary. But even though employers and employees are free to terminate employment at any time, New York State still requires certain specific steps be taken by employers when employees depart, whether voluntarily or involuntarily.

Employers with employees working in New York should be aware of the following requirements that upon the termination or separation of any New York employee:

1. <u>Written Notice of Effective Date of Termination and Cancellation of Benefits</u>

**N.Y. Labor Law, § 195(6)** requires employers to provide written notice to discharged employees, stating the effective date of termination. The notice must also provide the exact date that any employee benefits, such as health, accident, and life insurance, will cease. This notice must be given to the employee no later than <u>five working days</u> after the date of termination.

This notice requirement applies not only to terminations initiated by the employer, but also to employees who resign, retire, or otherwise leave voluntarily. Employers of New York State employees should ensure that they have processes in place to provide this written notice to all departing employees within five days of separation. In the case of termination initiated by the employer, we would advise employers to be prepared to provide this written notice at the time of termination, whenever possible.

2. <u>Written Notice of Unemployment Insurance Availability</u>

**12 N.Y.C.R.R. § 472.8** requires all employers to provide notice, at the time of separation, of the employee's right to file an application for unemployment benefits. The notice is to be provided on <u>Form IA 12.3</u>, provided on the Department of Labor website.

Once again, the law does not distinguish between employees separating voluntarily or involuntarily. This means that even in a situation where the employee's departure clearly does not qualify her for unemployment insurance benefits, the form must still be provided.

Employers of New York State employees should confirm that Form IA 12.3 is included with the notice provided to all employees upon separation.

3. <u>Final Paychecks Must Be Issued By The Next Regular Payday</u>

**N.Y. Labor Law § 191** requires employers to issue a final paycheck to departing employees on or before the next regularly scheduled pay date. If requested by the employee, final paychecks must be mailed to the employee.

Commissions are considered wages under New York law. New York requires all commission agreements to be in writing, and to specifically address how commissions will be paid when the employment relationship ends. All commissions earned at the time of termination must be paid as required for all other wages. For commissions that have not yet been earned at the time of

termination, the terms of the written employment agreement will control regarding if and when such commissions will be paid.

New York does not require employers to provide paid vacation; however, any accrued and unused paid vacation that is provided to employees must be paid out at termination unless the employer has a written policy specifically stating that vacation pay is forfeited upon termination. Employers of New York employees should review their vacation policies and craft clear provisions specifying any vacation caps or forfeiture policies they wish to enforce.

# EXHIBIT F

# Award Appeal

From: J Foy (jlkf1@yahoo.com)

To: fshea@nycourts.gov

Cc: dserrano@nycourts.gov

Date: Friday, November 1, 2019, 03:19 PM EDT

Sergeant Shea,

For the record, as I'm sure you are aware, my request for an "appeal" for a merit and or lifesaving award for Officer Kim Ferraiolo and me was denied without explanation.

I'm truthfully astonished. Kim and I came to the aid of a struggling fellow court officer, Officer Chris Spatola, and stopped what could have potentially amounted to a mass shooting. According to Officer Spatola, the primary reason for this arrest was due to the subject, Shaun Bonitto, being disorderly, and subsequently attempting to unholster and gain control of his firearm. I mention the fact that Chris was struggling and in need of assistance, because he was unable to handcuff Mr. Bonitto. This might have been due to the serious nature of the wounds inflicted on Chris while trying to gain control of Bonitto. He is still out on leave from these injuries. Kim and I didn't incur any which enabled us to act swiftly in restraining the subject and prevent more critical injuries to Officer Spatola.

In the command approved official report me and Kim are listed as the fifth and ninth officers to respond to the incident. I'm not certain why it was written in such a way. Both Major Serrano and Lieutenant Young were aware of my role, and thanked me in passing on two separate occasions for calling for further assistance, over the radio, while the incident was in progress.

To be clear my radio call prompted additional officers to respond to the incident, not the duress alarm as it was falsely described in the report. The duress alarm in room 503, where the incident unfolded, was not working at the time the incident took place.

The content of the report is full of "alternate" facts that fits a narrative the command apparently wants portrayed, one which eliminates the role of the women involved and exalts that of the sole male. I submitted what I personally witnessed and did during the incident to the awards appeal panel. I'm not sure they actually reviewed my submission, so please find it attached to be reconsidered.

The official report undoubtedly presents an ethics issue. Additionally, for the command to submit such a report that completely eliminates Kim's and my contribution brings forth an Equal Employment Opportunity (EEO) issue that should be investigated.

Sincerely,

Jahn K. Foy

# EXHIBIT G

## STATE OF NEW YORK
## UNIFIED COURT SYSTEM
## UNUSUAL OCCURRENCE REPORT

| DATE OF OCCUR. | TIME | COURT/FACILITY | PLACE OF OCCURRENCE | UNUSUAL NUMBER | | |
|---|---|---|---|---|---|---|
| | | | | LOC. CODE | REP. NO | YEAR |
| 03/11/2019 | 1632 | NYC CIVIL COURT - KINGS COUNTY | PART T - ROOM 503 | C3 | 90410 | 2019 |

**NATURE OF UNUSUAL OCCURRENCE**

☒ ARREST      ☐ ATTEMPTED ESCAPE      ☐ BOMB THREAT

☐ DISRUPTIVE PRISONER      ☐ DISRUPTIVE SPECTATOR      ☐ JUDICIAL THREAT

☐ PRISONER ESCAPE      ☐ PROPERTY DAMAGE      ☐ PROPERTY THEFT

☐ REPORT OF CRIME      ☐ SUMMONS      ☐ OTHER (SPECIFY BELOW)

| LASTNAME | FIRSTNAME | M.I. | EMPLOYEE NO | SEX | AGE |
|---|---|---|---|---|---|
| BONITTO | SHAUN | | NO | M | 33 |

| ADDRESS | 50 VANDALIA AVENUE #10A |
|---|---|
| | BROOKLYN, NY 11239 |

| LASTNAME | FIRSTNAME | M.I. | EMPLOYEE | SEX | AGE |
|---|---|---|---|---|---|
| | | | | | |

| ADDRESS | |
|---|---|

**DETAILS:** (Include pertinent information regarding nature of unusual occurrence. If arrest, include Arrest No., Pct., Charges, Complainant's Name and Address, Court, Judge, Disposition)

*At t/p/o Shaun Bonitto aka "Maurice Taj Bey" began yelling in the courtroom, "I'm putting a lien on you! (referring to the judge), I'm putting a lien on you, you and you!!" I advised him to be quiet, step back and wait for his paperwork. He continued to be loud and disrupt court proceedings. Subject refused to comply after repeated attempts to get him to calm down and leave the courtroom. As I went to place subject under arrest, he pushed my arm, lunged at me, grabbed my holstered firearm with both hands and repeatedly yanked at my firearm. I used the minimum physical force necessary to secure my firearm and get subject to release his grip on my firearm. During the struggle, I fell to the floor on both knees, twisted my left wrist, scraped my right hand and subsequently experienced pain in my back and neck.(See Aided report C3-90402-2019 for details.) The judge activated the duress alarm and additional officers responded. CO Devaughn Graham #8102, CO Rawle Griffith #3024, CO Daniel Corr #6490, CO Bernard O'Reilly #6997, CO John Foy #7641, CO Kela Grace #6386, CO Erica Adams #7971, CO Sandra Nesbitt-Malone #6774, COT Kim Ferraiolo #3830, COT William Schultz #6746, Lt. Benson #199, Lt. David Serrano #173 responded. I was able to subdue subject with the assistance of responding officers. Subject was brought to ....Continue to next page*

**✱THE DURESS ALARM WAS NOT WORKING AT THE TIME OF THE INCIDENT:**

| NAME AND ADDRESS OF WITNESS | JUDGE FRANCES ORTIZ |
|---|---|
| | 141 LIVINGSTON STREET |
| | BROOKLYN, NY 11201 |

....Continue to next page

| SUBMITTED BY | TITLE | SHIELD NO. | DATE |
|---|---|---|---|
| CHRIS SPATOLA | NYS COURT OFFICER | 6837 | 03/11/2019 |

| REPORTED TO | TITLE | SHIELD NO. | DATE |
|---|---|---|---|
| TAWYA R. YOUNG | LIEUTENANT | 166 | 03/11/2019 |

| APPROVED BY | TITLE | SHIELD NO. | DATE |
|---|---|---|---|
| GIDEON RABINOVICZ | | | 03/14/2019 |

| LINKED REPORTS | 90292,90401,90402,90403,90413 |
|---|---|

FINAL APPROVED

**REPORT ID:** *90410*

Continuation ....DETAILS: (Include pertinent information regarding nature of unusual occurrence. If arrest, include Arrest No., Pct., Charges, Complainant's Name and Address, Court, Judge, Disposition)

*Operations for processing. Mr. Bonitto was offered and refused medical attention. MSP transported subject to Central Booking for further processing with Sgt. Manetta #560 and CO Acampora #3702 at 1630 hours. (Report continued in UOR #C3-90413-2019.)*

Continuation ....NAME AND ADDRESS OF WITNESS

*CARL HUSBANDS, ESQ.*
*26 COURT STREET*
*SUITE 1704*
*BROOKLYN, NY 11242*

*TRINA RAHMAN, ESQ.*
*118-35 QUEENS BLVD.*
*9TH FLOOR*
*FOREST HILLS, NY 11375*

FINAL APPROVED

# EXHIBIT H



STATE OF NEW YORK
UNIFIED COURT SYSTEM
111 CENTRE STREET
NEW YORK, N.Y. 10013
(646) 386-4200

LAWRENCE K. MARKS
Chief Administrative Judge

GEORGE J. SILVER
Deputy Chief Administrative Judge
New York City Courts

November 20, 2020

7028 0640 0000 0970 0418

CERTIED MAIL –
RETURN RECEIPT REQUESTED
Jahn K. Foy
517 Rogers Avenue
Brooklyn, NY 11225

Jahn K. Foy
2465 Ala Wai Boulevard-Apt.804      7020 0640 0000 0970 0401
Honolulu, HI 96815-3432

Dear Ms. Foy:

This is to inform you that the determination outlined in my letter to you dated February 18, 2020, is still in effect.

Very truly yours,

George J. Silver

cc: Alia Razzaq
Dennis Quirk

# EXHIBIT I





**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**
**CHIEF CLERK FOR CIVIL MATTERS**
360 ADAMS STREET
BROOKLYN, NEW YORK 11201
(347) 296-1800 • FAX (718) 643-3622

**HON. LAWRENCE KNIPEL**
Administrative Judge for Civil Matters
Second Judicial District

**CHARLES A. SMALL, ESQ.**
Chief Clerk for Civil Matters

February 2, 2022

Jahn K. Foy
517 Rogers Avenue
Brooklyn, New York 11225

re: 1708/2020 Foy v. State of New York

Dear Ms. Foy:

Thank you for taking the time to contact the Chief Judge regarding the status of your Article 78 proceeding.

The Supreme Court, Civil Term, here in Kings County handles an enormous volume of cases and is one of the busiest courthouses in New York City. With over 22,000 new cases filed annually, the volume sometimes causes a delay in the process. However, this court is making every effort to expedite the rendering of decisions on submitted matters. I have spoken to the Hon. Peter Sweeney, the judge presiding over your case, who indicated that he is currently reviewing the file on your case and will be rendering a decision in the near future.

Again, we thank you for bringing this to our attention and apologize for any inconvenience this may have caused you. Please contact me if I can be of further assistance.

Very truly yours,

Charles A. Small
Chief Clerk for Civil Matters

JKF