United States District Court
Eastern District of New York

-----------------------------------X

Jahn K. Foy,

              Plaintiff,              **Memorandum and Order**

   - against -               No. 23-cv-656 (KAM) (SJB)

New York State Unified Court
System, *et al.*,

              Defendants.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Jahn K. Foy, a former New York State court officer, brought this action *pro se* against the New York State Unified Court System ("UCS"); Dennis Quirk, President of the New York State Court Officers Association ("NYSCOA"); and a group of state court judges, clerks, and court officers including the Honorable Peter P. Sweeney; Alia Razzaq; Charles A. Small; Major David Serrano; Lieutenant Tawya Young; Sergeant Frank Shea; the Honorable Janet DiFiore; and the Honorable Tamiko Amaker after she was terminated from her position.[1]  The defendants now move to dismiss the action for lack of subject-matter jurisdiction and failure to state a claim.  For the reasons below, the Court grants the defendants' motions.

---

[1] Foy originally also brought claims against the UCS Office of Court Administration, but her operative complaint omits that defendant.

**Background**

This is the fourth judicial proceeding arising from Foy's termination as a court officer in February 2020. The New York State Court of Claims, the Supreme Court of the State of New York, and the United States District Court for the Southern District of New York all dismissed her prior challenges throughout 2021 and 2022.

I. **Foy's Termination**

According to Foy's Second Amended Complaint, Foy worked as a court officer in the New York City Civil Court in Kings County from 2003 to 2020. (ECF No. 17, 2d Am. Compl. ¶ 6.) In March 2019, she and other court officers responded to an incident involving a person yelling in a courtroom who eventually was subdued. (*Id.* Ex. G.) Foy alleges that the official report of the incident "was written to diminish her role." (*Id.* ¶ 21.) A white male officer involved in the incident received an award for his role, and a white female officer "was told she would be taken care of, just not at the ceremony." (*Id.*) Foy, a black woman, was not nominated for an award. (*Id.*)

Foy made a "verbal inquiry" regarding the award to her union representative, Sergeant Frank Shea, in July 2019, but received no response. (*Id.* ¶ 20.) On November 1, 2019, Foy emailed Sgt. Shea copying her commanding officer, Major David Serrano, and objecting to the incident report on the ground that

it "eliminate[d] the role of the women involved and exalt[ed] that of the sole male." (*Id.* Ex. F.)  Foy continued that the report "[brought] forth an Equal Employment Opportunity (EEO) issue that should be investigated." (*Id.*)  Foy's email did not discuss race discrimination. (*Id.*)

On December 10, 2019, Maj. Serrano, Sgt. Shea, and Lieutenant Tawya Young met with Foy. (*Id.* ¶ 10.)  According to a memo written that day purporting to summarize their discussion, the purpose of the meeting was to "discuss lateness issues." (*Id.* Ex. B.)  The memo stated that Foy twice violated a "stipulation" she signed on February 13, 2019, providing that she would not arrive late to work more than three times in a four-week period. (*Id.*)  Maj. Serrano provided a copy of the memo to Foy, who "did not agree" with its contents. (*Id.* ¶ 10.) The next day, Maj. Serrano requested Alia Razzaq, the Chief Clerk of the Manhattan Civil Court, to terminate Foy's employment. (*Id.* ¶ 11.)

On February 18, 2020, Lt. Young and Sgt. Shea handed Foy a letter signed by Judge George J. Silver, Deputy Chief Administrative Judge of the New York City Courts, stating that her employment had been terminated "pursuant to the terms of [a] Stipulation of Settlement dated February 7, 2019." (*Id.* ¶¶ 12-13; Ex. D.)  The letter explained that since entering into the stipulation, Foy violated the stipulation's terms because her

3

late arrivals aggregated to over thirty minutes in a consecutive four-week period and Foy reported to her assigned post late more than three times in a different consecutive four-week period. (*Id.* Ex. D.)  As Foy returned her work property, Sgt. Shea mentioned that Dennis Quirk, the president of NYSCOA, said that there was "nothing they [could] do about this."  (*Id.* ¶ 13.) Foy alleges that Tamiko Amaker, the Acting Chief Administrative Judge of UCS, had "authority to rectify the situation and reinstate [Foy] into her court officer position" but "[had] not done so."  (*Id.* ¶ 169.)

## II.  **Foy's Prior Proceedings Contesting Her Termination**

After her termination, Foy brought an action on July 21, 2020, against the State of New York in the New York State Court of Claims seeking reinstatement to her position.  (*Id.* ¶ 19.) The Court of Claims dismissed the case on February 16, 2021, on the ground that the court lacked jurisdiction to grant such relief.  (*Id.*); *see Foy v. New York*, 144 N.Y.S.3d 285 (N.Y. Ct. Cl. 2021).

Next, Foy filed a petition on July 12, 2021, under Article 78 of the New York Civil Practice Law in the Supreme Court of the State of New York, Kings County, to vacate her termination.[2]  (2d Am. Compl. ¶ 37; *see* ECF No. 58-8 ("Art. 78

---

[2] An Article 78 proceeding challenges a state or local administrative agency action.  *See* N.Y. C.P.L.R. § 7801.

Order").)  While waiting for a decision, Foy attempted to
contact the Honorable Janet DiFiore, the Chief Judge of the New
York State Court of Appeals, regarding the delay.  (2d Am.
Compl. ¶ 38.)  Foy received a response from Charles A. Small,
the Chief Clerk for Civil Matters in the Supreme Court of the
State of New York, Kings County, explaining that the judge
presiding over Foy's Article 78 proceeding was "currently
reviewing the file" and would be "rendering a decision in the
near future." (*Id.* Ex. I.)  On February 3, 2022, the Honorable
Peter P. Sweeney dismissed the proceeding as untimely.  (Art. 78
Order at 5-6.)  Justice Sweeney further opined that the case
would have been dismissed on the merits because Foy's violation
of her stipulation provided a rational basis to terminate her.
(*Id.* at 6.)

While her Article 78 action proceeded, Foy commenced a
federal civil rights action in this Court against the State of
New York and Judge Silver, which was assigned to the undersigned
judge and subsequently transferred to the Southern District of
New York.  *See* Mem & Order, ECF No. 4, *Foy v. New York*,
No. 21-cv-4926 (KAM) (E.D.N.Y. Sept. 8, 2021).  On May 4, 2022,
that court dismissed the action on the ground that the
defendants were entitled to state sovereign immunity.  ECF
No. 31, *Foy v. New York*, No. 21-cv-7647 (VBS) (S.D.N.Y. May 4,
2022) ("S.D.N.Y. Order").  The court explained that although

Congress abrogated state sovereign immunity with respect to
federal employment discrimination claims, Foy did not bring such
a claim.  *Id.* 8.  Even if she had, the court explained, she
could not have proceeded because she did not receive a right-to-
sue letter from the Equal Employment Opportunity Commission
("EEOC") and thus failed to exhaust her administrative remedies.
*Id.* 8-9.

## III. **The Instant Action**

Foy obtained two right-to-sue letters from the EEOC on
December 28, 2022, and commenced the instant action in this
Court on January 30, 2023.  (*See* ECF No. 1, Compl., Ex. A.)  She
amended her complaint as of right on February 13, 2023, (ECF
No. 7, Am. Compl.), and again with the Court's leave on
March 31, 2023, (2d Am. Compl.).  Foy's Second Amended Complaint
asserts eighteen claims against various combinations of Judge
DiFiore, Judge Amaker, Justice Sweeney, Razzaq, Small, Quirk,
Maj. Serrano, Lt. Young, Sgt. Shea, and UCS itself.  (2d Am.
Compl. ¶¶ 45-174.)  Foy brings her claims under the Titles I and
V of the Americans with Disabilities Act ("ADA"); Sections 503
and 504 of the federal Rehabilitation Act; Title VII of the
Civil Rights Act of 1964 ("Title VII"); the Fair Labor Standards
Act ("FLSA"); Sections 242, 1983, 1985, and 1986 of the Civil
Rights Act of 1866; the federal mail fraud statute; the New York
State Human Rights Law ("NYSHRL"); the New York Labor Law

6

("NYLL"); the New York City Human Rights Law ("NYCHRL"); the New York State Penal Law; and various state common law theories. (*Id.*)  As to remedies, Foy seeks compensatory damages, punitive damages, double backpay, interest, and costs.  (*Id.* p. 67.)  Foy also requests an injunction "to be reinstated back to her position as a court officer," to "receive front pay and time in order to complete 30 years of service," and then to be "immediately retired at the rank of major."  (*Id.*)

Quirk, proceeding *pro se* at the time, answered Foy's Second Amended Complaint.  (ECF No. 21, Answer to 2d Am. Compl.)  The other defendants requested a pre-motion conference in anticipation of moving to dismiss, which occurred on June 14, 2023.  (Minute Entry, June 14, 2023.)  Quirk later retained counsel and requested permission to join the other defendants in moving to dismiss, which the Court granted.  (Order, July 25, 2023.)  All the defendants' motions are now fully submitted. (ECF Nos. 55–70.)

### Legal Standards

The defendants' motions raise arguments under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction to adjudicate the action.  *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023).  The plaintiff has

the burden to establish subject-matter jurisdiction by a preponderance of the evidence. *Collins v. United States*, 996 F.3d 102, 108 (2d Cir. 2021).  In resolving a motion brought under Rule 12(b)(1), the Court may consider affidavits or other materials beyond the pleadings. *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

## II.  Motion to Dismiss for Failure to State a Claim

A motion under Rule 12(b)(6) challenges the complaint's legal sufficiency. *NexPoint Diversified Real Estate Tr. v. Acis Cap. Mgmt., L.P.*, 80 F.4th 413, 417 (2d Cir. 2023).  To survive a Rule 12(b)(6) motion, the complaint must state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009).  A claim is facially plausible if the complaint alleges enough factual matter to support a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  The court must assume the truth of the complaint's well-pleaded factual allegations but disregard any legal conclusions couched as factual allegations. *Id.*  In resolving a motion brought under Rule 12(b)(6), the court must limit its consideration to the complaint, documents incorporated by reference into the complaint, documents not incorporated but nonetheless integral to the complaint, and matters properly subject to judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

**Discussion**

In resolving the instant motions and evaluating Foy's Second Amended Complaint, the Court heeds the Second Circuit's directive to hold *pro se* filings to less stringent standards than it would hold counseled filings and to liberally construe them to raise the strongest arguments they suggest. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012.)

## I.   UCS

UCS moves to dismiss based on state sovereign immunity, issue preclusion, lack of venue, and failure to state a claim. (ECF No. 57, Mem Law Supp. Def. UCS's Mot. Dismiss Am. Compl. ("UCS's Mem."), 12–20.)

### A.   State Sovereign Immunity

State sovereign immunity generally prohibits federal courts from adjudicating claims brought against non-consenting states. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity applies to states themselves as well as to their agents and instrumentalities. *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The Second Circuit has held that UCS "unquestionably" has state sovereign immunity as an instrumentality of the State of New York. *Id.* at 368.

A plaintiff may overcome a state sovereign immunity defense if Congress abrogates the state's immunity or the state waives it. *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir.

2004).  Congress has abrogated state sovereign immunity with
respect to Title VII, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447,
449 n.2 (1976); *Cater v. New York*, 316 F. Supp. 3d 660, 667
(S.D.N.Y. 2018), but it has not done so with respect to any
other statute under which Foy brings her claims, *see T.W. v.
N.Y. State Bd. of Law Examiners*, 996 F.3d 87, 92 (2d Cir. 2021)
(Rehabilitation Act); *Allah v. City of N.Y.*, No. 15-cv-6852
(CBA), 2016 WL 676394, at *3 (E.D.N.Y. Feb. 17, 2016)
(Sections 1983, 1985, and 1986); *Soloviev v. Goldstein*,
104 F. Supp. 3d 232, 244 (E.D.N.Y. 2014) (FLSA); *Quadir v. N.Y.
State Dep't of Labor*, 39 F. Supp. 3d 528, 536–37 (S.D.N.Y. 2014)
(ADA); *Sierotowicz v. State of N.Y. Div. of Housing & Cmty.
Renewal*, No. 04-cv-3886 (NGG), 2005 WL 1397950, at *2 (E.D.N.Y.
June 14, 2004) (federal mail fraud statute); *Hurst v. City of
Rehoboth Beach*, 288 F. App'x 20, 25 (3d Cir. 2008)
(Section 242).  UCS has not waived its sovereign immunity with
respect to such claims.  *See T.W.*, 996 F.3d at 95
(Rehabilitation Act); *Murawski v. N.Y. State Bd. of Elections*,
285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) (Sections 1985 and
1986); *Soloviev*, 104 F. Supp. 3d at 244 (FLSA); *Trivedi v. N.Y.
State Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d
712, 734–35 (S.D.N.Y. 2011) (Titles I and V of the ADA, NYSHRL,
NYCHRL, and Section 1983); *see also* N.Y. Labor Law § 190
(defining "employer" not to include a "governmental agency").

Accordingly, all Foy's claims against UCS except her Title VII claims are dismissed because UCS has state sovereign immunity from liability for those claims.

## B. Preclusion

UCS next argues that issue preclusion bars Foy from relitigating "the lawfulness of her termination." (UCS's Mem. 14-15.) Issue preclusion prevents a party from relitigating an issue already litigated and adjudicated in a prior action that was necessary to a final judgment on the merits in the prior action. *Clark v. Hanley*, 89 F.4th 78, 100 n.28 (2d Cir. 2023). Issue preclusion does not bar Foy's claims because the issues of whether she was discriminated against based on her race or sex or whether she was retaliated against for engaging in activity protected by Title VII were not raised in the prior state proceedings and were not adjudicated in Foy's prior federal court action. *See Foy*, 144 N.Y.S.3d at 285; Art. 78 Order; S.D.N.Y. Order 8-9.

## C. Venue

UCS next seeks dismissal on the ground that the Court "already has determined that the instant venue is improper." (UCS's Mem. 16.) The Court's prior venue determination was about Foy's complaint in the prior federal action, which did not specify the courthouse where Foy worked. *See* Mem & Order, ECF No. 4, *Foy v. New York*, No. 21-cv-4926 (KAM) (E.D.N.Y. Sept. 8,

11

2021).  The Second Amended Complaint filed in this action is
clear that Foy worked at a courthouse in Kings County and that
the relevant events occurred there.  (*See, e.g.*, 2d Am. Compl.
¶¶ 6, 10, 19, 28, 35, 38, 59, 64, 94, 98, 133, 139.)  Thus, the
previous venue determination this Court made in Foy's prior
federal court action does not support dismissing the instant
action.

>    **D.  Legal Sufficiency**

Finally, UCS argues that Foy failed to state a claim for
relief.  (UCS's Mem. 17–20.)  Title VII, the only statute still
at issue given UCS's sovereign immunity from Foy's other claims,
forbids an employer from "discriminat[ing] against any
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's race,
color, religion, sex, or national origin."  42 U.S.C.
§ 2000e-2(a)(1).  Title VII also forbids an employer from
retaliating against an employee "because" the employee "has
opposed any practice made an unlawful employment practice" by
Title VII.  42 U.S.C. § 2000e-3(a).  Foy asserts both
discrimination and retaliation claims against UCS.  (2d Am.
Compl. ¶¶ 75–83.)

Foy failed to state a Title VII discrimination claim
against UCS.  To state a Title VII discrimination claim, the
plaintiff must allege (1) membership in a protected class,

(2) qualification for the position held, (3) an adverse employment action, and (4) that the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).

Here, even if the first two elements are met, the only alleged action that might even possibly evince discriminatory intent was that a report was written in a way that "diminished" her role in an incident for which she did not receive an award that a white male officer received and for which a white female officer was told "she would be taken care of." (*See* 2d Am. Compl. ¶ 21.) A "failure to give an employee an award – by itself – does not constitute an adverse employment action." *Malloy v. Pompeo*, No. 18-cv-4756 (PGG), 2020 WL 5603793, at *16 (S.D.N.Y. Sept. 18, 2020). Foy alleged only that an incident report understated her role and that she did not get an award. She did not allege facts supporting a reasonable inference that the author of the report was motivated by racial or sex-based animus. Nor did she allege that the report *caused* her not to get the award or that she suffered any harm beyond not getting the award. Thus, Foy has not alleged an adverse employment action and has not stated a Title VII discrimination claim against UCS.

Foy also failed to state a Title VII retaliation claim

13

against UCS.  To state a retaliation claim under Title VII, the plaintiff must allege that (1) he or she participated in protected activity, (2) the defendant knew of the protected activity, (3) the plaintiff suffered an adverse employment action, and (4) there was a causal connection between the protected activity and adverse employment action.  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  Foy claims her negative performance evaluation and subsequent termination were retaliation for her email to her union representative and supervisor suggesting that sex discrimination influenced how the March 2019 incident report was written.  (2d Am. Compl. ¶ 78.)

Although an email complaining of sex discrimination is protected activity, *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 324–25 (E.D.N.Y. 2014), Foy's claim fails because she does not allege that UCS had knowledge of this activity.  To state a Title VII retaliation claim, a plaintiff need allege only "general corporate knowledge" of the protected activity, not that the person who took the alleged adverse action had actual knowledge.  *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  Still, Foy was required to allege facts sufficient to draw a reasonable inference that "the person who made the decision to take adverse action was 'acting explicitly or implicit[ly] upon the orders of a superior who

ha[d] the requisite knowledge.'" *Mitura v. Finco Servs., Inc.*, No. 23-cv-2879 (VEC), 2024 WL 1160643, at *2 (S.D.N.Y. Mar. 18, 2024) (quoting *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010)). Here, Foy's email was directed to Sgt. Shea and Maj. Serrano, which shows only that those two defendants had knowledge of her complaint. (*See* 2d Am. Compl. Ex. F.) The person who signed her termination letter, however, was Judge Silver. (*Id.* Ex. D.) Foy does not allege that Judge Silver was aware of Foy's email, nor does she allege that either Sgt. Shea or Maj. Serrano was Judge Silver's "superior or directed him to fire her." *See Mitura*, 2024 WL 1160643, at *2. Thus, Foy has "fail[ed] to allege facts from which to infer" that Judge Silver, the apparent decision maker with respect to Foy's termination, "was aware of [the] complaint" in her November 2019 email. *See id.* at *3. Accordingly, Foy's Title VII claims against UCS are dismissed.

## II.  Individual State Defendants

Foy brings her claims against Judge DiFiore, Judge Amaker, Justice Sweeney, Razzaq, Small, Maj. Serrano, Lt. Young, and Sgt. Shea in both their official and individual capacities. (2d Am. Compl. ¶ 4.)

### A.  Official Capacity Claims

As with UCS, state sovereign immunity bars most of Foy's claims against the individual state defendants in their official

capacities.  An official-capacity civil damages claim against a state official is considered a claim against the state itself for state sovereign immunity purposes.  *Williams v. Marinelli*, 987 F.3d 188, 197 n.13 (2d Cir. 2021).  As explained above, (*supra* I.A), although Congress abrogated New York's state sovereign immunity as to Title VII, it did not do so as to any other statute under which Foy brings her claims, nor has UCS consented to be sued with respect to claims brought under any of those statutes.  Further, because an individual person may not be held liable under Title VII, regardless of whether the person is sued in his or her individual or official capacity, *Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 595 (S.D.N.Y. 2017), Foy may not proceed against any of the individual state defendants in their official capacities to the extent she seeks damages.

With respect to Foy's request for non-monetary relief, there is an exception to state sovereign immunity that the Supreme Court created in *Ex parte Young*, 209 U.S. 123 (1908), for cases where the plaintiff seeks prospective relief for an ongoing violation of federal law.  *Seneca Nation v. Hochul*, 58 F.4th 664, 670 (2d Cir. 2023).  Here, part of Foy's requested relief is "to be reinstated back to her position as a court officer," to "receive front pay and time in order to complete 30 years of service," and to be "immediately retired at the rank of

16

major." (2d Am. Compl. p. 67.) Though prospective compensation is not the kind of prospective relief *Young* contemplates, *Syrkin v. State Univ. of N.Y.*, No. 04-cv-4336 (FB), 2005 WL 23871819, at *1 n.1 (E.D.N.Y. Sept. 29, 2005), reinstatement can fall within the *Young* exception in some circumstances if the defendant actually has authority to reinstate the plaintiff, *Soloviev*, 104 F. Supp. 3d at 245.

Nonetheless, based on Foy's allegations in the Second Amended Complaint, her request for reinstatement does not fall within the *Young* exception. Foy alleges that Judge DiFiore and Judge Amaker "[i]n their administrative roles . . . hold[] the authority to reinstate her." (*See, e.g.*, 2d Am. Compl. ¶¶ 44, 169.) But Foy's mere identification of these defendants' official positions, "coupled with the conclusory allegation that [they] . . . [have] the power to reinstate" her, is insufficient to proceed under *Young* without more factual detail suggesting these defendants do in fact have such authority. *See Keles v. Davalos*, 642 F. Supp. 3d 339, 359–60 (E.D.N.Y. 2022). Moreover, *Young* is "not applicable" where, as here, the plaintiff's allegations relate to "event[s] that took place in the past" and not "ongoing conduct." *Mallison v. Conn. Office of Early Childhood*, 657 F. Supp. 3d 221, 234 (D. Conn. 2023); *see Falcon v. City Univ. of N.Y.*, No. 15-cv-3421 (ADS), 2016 WL 3920223, at *9 (E.D.N.Y. July 15, 2016) (finding alleged "discrete acts of

17

discrimination" that occurred in the past "not the kind of ongoing violations of federal law that [*Young*] was intended to remedy"). Accordingly, Foy's claims against the individual state defendants in their official capacities are dismissed.

### B.   Individual Capacity Claims

#### 1.   Justice Sweeney

Justice Sweeney is judicially immune from Foy's claims against him. Judges have absolute immunity from civil liability for acts they perform in their judicial capacities, even if they are alleged to have acted maliciously, corruptly, or in excess of their jurisdiction. *Bradley v. Fisher*, 80 U.S. 335, 351 (1871). Judicial immunity can be overcome only with respect to non-judicial conduct or where the judge acts in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley*, 80 U.S. at 352).

Foy's claims against Justice Sweeney are based on his denial of her Article 78 petition, (*See* 2d Am. Compl. ¶¶ 41-43, 80, 89, 113, 115, 119, 121, 165-66), which indisputably was a judicial act, *see Brodsky v. N.Y. City Campaign Fin. Bd. ex rel. Weisman*, 796 F. App'x 5, n.1 (2d Cir. 2019) (summary order) (concluding defendant "acted in her judicial capacity . . . when she presided over [plaintiff's] Article 78 lawsuit"). Moreover, Justice Sweeney did not act in the clear absence of all jurisdiction, as justices of the New York State Supreme Court

have statutory authority to preside over Article 78 proceedings. *See id.* (citing N.Y. C.P.L.R. § 7804(b)).  Accordingly, Foy's individual-capacity claims against Justice Sweeney are dismissed.

Judge DiFiore and Judge Amaker are not entitled to judicial immunity in the instant case because Foy's allegations against them do not concern any exercise of their adjudicatory authority.  Tasks that are "not essentially judicial, such as supervising and managing court employees," do not warrant absolute immunity, even when performed by judges.  *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  Accordingly, the Court addresses Foy's claims against Judge DiFiore and Judge Amaker below.  (*Infra* II.B.3.)

### 2. Clerk Defendants

The court clerk defendants, Small and Razzaq, have quasi-judicial immunity from Foy's claims against them.  Court clerks have absolute immunity from civil liability based on actions they take in helping process cases, even if such actions are "ministerial" or "administrative."  *Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997).

Here, during the relevant time, Small was the Chief Clerk for Civil Matters at the Supreme Court of the State of New York,

Kings County.  (*See* 2d Am. Compl. Ex. I.)  Foy's only allegation against Small was that he sent her a letter noting that Justice Sweeney was "currently reviewing" her case file and would be "rendering a decision in the near future." (*Id.; see id.* ¶¶ 38, 43, 133.)  Thus, Small is entitled to quasi-judicial immunity from liability for helping communicate the status of Justice Sweeney's review of Foy's Article 78 petition.

Razzaq also is quasi-judicially immune from Foy's claims against her.  During the relevant time, Razzaq was the Chief Clerk of the Manhattan Civil Court.  (2d Am. Compl. ¶ 11.)  Foy's only allegation against her is that she "provided" the termination letter from UCS's Chief Administrative Judge to Lt. Young and Sgt. Shea, who then gave it to Foy.  (*See id.* ¶¶ 68, 125.)  As with Small, Razzaq's role in helping a judge communicate a message to a court employee in the ordinary course of her job duties entitles her to quasi-judicial immunity from Foy's claims against her.  Accordingly, Foy's individual-capacity claims against Small and Razzaq must be dismissed based on quasi-judicial immunity.

### 3. Judge DiFiore, Judge Amaker, and the Court Officer Defendants

Judge DiFiore, Judge Amaker, Maj. Serrano, Lt. Young, and Sgt. Shea are not immune from Foy's claims in their individual capacities, so the Court evaluates the legal sufficiency of

Foy's claims against them on the merits.

### a.  Criminal Claims

Foy asserts claims under Section 242 of the federal Civil Rights Act of 1866 and under the federal mail fraud statute. (*See* 2d Am. Compl. ¶¶ 97–100, 106–10, 131–36); 18 U.S.C. § 242; 18 U.S.C. § 1341.  These federal criminal statutes do not authorize private rights of action.  *Paulin v. Figlia*, 916 F. Supp. 2d 524, 535 (S.D.N.Y. 2013) (Section 242); *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008).  Accordingly, Foy's claims under these criminal statutes are dismissed.

### b.  ADA, Title VII, and the Rehabilitation Act

Foy asserts claims under the ADA, Title VII, and the Rehabilitation Act.  (*See* 2d Am. Compl. ¶¶ 45–56, 75–83, 138–41.)  These statutes only permit organizational defendants to be held liable, not individual defendants.  *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (Rehabilitation Act); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (ADA); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 413 (S.D.N.Y. 2017) (Title VII).  Accordingly, Foy's ADA, Title VII, and Rehabilitation Act claims are dismissed.

### c.  FLSA

Foy asserts claims under FLSA's retaliation provision. (*See* 2d Am. Compl. ¶¶ 84–92); 29 U.S.C. § 215(a)(3).  To state a FLSA retaliation claim, the plaintiff must allege that (1) the

plaintiff participated in activity protected under FLSA, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal connection between the protected activity and adverse action. *Mullins v. City of N.Y.*, 626 f.3D 47, 53 (2d Cir. 2010). Protected activity means a complaint "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by [FLSA] and a call for their protection." *Aflalo v. Cantor Fitzgerald, L.P.*, 298 F. Supp. 3d 668, 695 (S.D.N.Y. 2018) (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015)).

Foy's FLSA retaliation claims fail because she did not allege that she engaged in any activity protected under FLSA. Here, Foy alleged only that she "asked her Union delegate . . . why [she had] not been nominated for an award as the other two officers directly involved in the incident were" and "did not get an acceptable response." (2d Am. Compl. ¶ 87.) She also alleged that she "followed up with her inquiry about the award in an email . . . outlining her displeasure about what had taken place, specifically the incident report having been altered, and being discriminated against." (*Id.*) These complaints, which have nothing to do with any right FLSA protects, cannot support a FLSA retaliation claim. *See Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110 (S.D.N.Y. 2015) (finding complaint not

protected activity under FLSA's retaliation provision because "it made a claim of disability-based discrimination" and "did not allege a violation of" FLSA).

Foy's remaining allegations appear to accuse Justice Sweeney of "not adher[ing] to the established . . . rules of the court or any law as it applie[d]" to the Article 78 proceeding. (*See* 2d Am. Compl. ¶¶ 88-89.)  As explained above, Justice Sweeney has judicial immunity from any claim based on these allegations.  (*Supra* II.B.1.)

### d.   Federal Civil Rights Claims

Foy asserts claims under Section 1983 of the federal Civil Rights Act of 1866.  (2d Am. Compl. ¶¶ 93-96, 101-05, 163-74.) Section 1983 creates a private right of action against any person acting under color of state law who deprives another person of a federal right.  42 U.S.C. § 1983.

First, Foy alleges violations of her due process rights under the Fourteenth Amendment, which forbids a state from depriving a person of "life, liberty, or property" without "due process of law."  (2d Am. Compl. ¶ 95); *see* U.S. Const. amend. XIV, § 1.  Specifically, Foy alleges that the defendants' conduct deprived her of "the employment property right."  (2d Am. Compl. ¶ 95.)  Foy has not alleged that she had "tenure or any other specific guarantee of employment," so her employment is considered "at-will."  *See Anderson v. New York*,

614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009). Because "at-will employment is not a constitutionally protected property interest," Foy has not stated a due process claim. *See id.* (quoting *Baron v. Port Auth. Of N.Y.*, 271 F.3d 81, 89 (2d Cir. 2001)). Regardless, the availability of an Article 78 proceeding satisfied constitutional due process. *See Vargas v. City of N.Y.*, 377 F.3d 200, 208 (2d Cir. 2004); *see Knights v. City Univ. of N.Y.*, 639 F. Supp. 3d 395, 402 (E.D.N.Y. 2022) (explaining that "Article 78 proceedings are considered 'a wholly adequate post-deprivation hearing for due process purposes'") (quoting *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001)).

Next, Foy claims her termination violated her right to "equal protection of the laws" as guaranteed by the Fourteenth Amendment. (2d Am. Compl. ¶ 95); *see* U.S. Const. amend. XIV, § 1. For a public employee to plead a constitutional equal protection claim, he or she must allege the existence of a similarly situated member of an unprotected class who was treated differently from how the plaintiff was treated. *Anderson*, 614 F. Supp. 2d at 426. Here, Foy does not allege the existence of a similarly situated comparator, such as a white or male court officer at the Kings County courthouse who faced similar issues of chronic lateness but was not terminated. (*See generally* 2d Am. Compl.) Thus, Foy has not stated an equal

24

protection claim.

Finally, Foy claims that she was unconstitutionally retaliated against for exercising her right to free speech under the First Amendment.  (2d Am. Compl. ¶¶ 101–05.)  For a public employee to state a First Amendment retaliation claim, the employee must allege that (1) he or she "spoke as a citizen on a matter of public concern," (2) he or she suffered an adverse employment action, and (3) a causal connection exists between the protected speech and adverse employment action.  *Anderson*, 614 F. Supp. 2d at 420 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

Here, Foy alleges that she was terminated for speaking out about perceived sex discrimination when she sent the November 2019 email regarding the courtroom disturbance report she believed to have understated her role in the incident.  (2d Am. Compl. ¶¶ 102–04.)  The first four paragraphs of Foy's email offered Foy's perspective on the March 2019 courtroom incident and disputed how the resulting incident report was written. (*Id.* Ex. F.)  These paragraphs alone do not amount to protected speech, as they implicate "matters only of personal interest" and not matters of "political, social, or other concern to the community."  *Singh v. City of N.Y.*, 524 F.3d 361, 372 (2d Cir. 2008) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).

Foy's email continued that the incident report

25

"eliminate[d] the role of the women involved and exalt[ed] that of the sole male" and that the report "present[ed] an ethics" or "Equal Employment Opportunity (EEO) issue that should be investigated." (*Id.*)  If these paragraphs had described "system-wide discrimination" or misconduct at UCS, they might have implicated a matter of public concern. *See Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 145 (E.D.N.Y. 2016) (quoting *Norton v. Breslin*, 565 F. App'x 31, 34 (2d Cir. 2014)).  However, because those paragraphs only alleged discrimination against Foy herself and one other court officer involved in the March 2019 incident, the email amounted to a discussion of "personal grievances" rather than protected speech.  *Id.* (collecting cases holding that public employees' complaints about isolated personalized discrimination rather than system-wide discrimination were not protected speech under the First Amendment).  Thus, Foy has not stated a viable First Amendment retaliation claim.  Accordingly, because Foy has not alleged any constitutional violations, her Section 1983 claims are dismissed.

Foy also asserts claims under two related federal civil rights statutes:  Sections 1985 and 1986.  (2d Am. Compl. ¶¶ 163–74.)  Section 1985(3) prohibits conspiracies to deprive an individual of equal protection under the law or equal privileges and immunities under the law.  42 U.S.C. § 1985(3).

To state a claim under this subsection, the plaintiff must "provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement . . . to achieve the unlawful end." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 148 (E.D.N.Y. 2022) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)). "[C]onclusory, vague, or general allegations of conspiracy" do not suffice. *Id.* (quoting *Porter v. City of N.Y.*, No. 03-cv-6463 (SJ), 2004 WL 7332338, at *5 (E.D.N.Y. Mar. 15, 2004)). Because Foy "provided no more than a conclusory allegation of conspiracy" here, she has not stated a Section 1985(3) claim. *See Sherman v. Yonkers Pub. Schs.*, No. 21-cv-7317 (CS), 2023 WL 137775, at *8 (S.D.N.Y. Jan. 9, 2023). Accordingly, Foy's Section 1985 claim is dismissed.

Section 1986 forbids a person with knowledge of and power to prevent a Section 1985 violation from neglecting or refusing to do so. 42 U.S.C. § 1986. The statute of limitations for an action based on a Section 1986 violation is one year. *Id.* The claim accrues when the plaintiff "knows or has reason to know of the harm or injury that is the basis of his [or her] action." *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Here, the harm underlying Foy's Section 1986 claim is her termination. (*See* 2d Am. Compl. ¶ 164.) Foy had reason to know of this harm "on the day she was terminated," *see Young*, 937 F. Supp. 2d at 354 (dismissing Section 1986 claim based on

27

unlawful termination for noncompliance with statute of limitations), which was February 18, 2020, (2d Am. Compl. ¶ 6). By the time she filed the present action on January 30, 2023, her Section 1986 claim had become time barred and thus must be dismissed.

### e. Fair Representation

The seventeenth count of Foy's Second Amended Complaint, which names Sgt. Shea, but not Maj. Serrano or Lt. Young, is captioned "breach of implied covenant of good faith and fair dealing." (*See id.* p. 62.)  Considering the substance of Foy's allegations, however, the Court concludes that Foy intended this claim to assert a federal fair representation claim.  Foy alleges that Sgt. Shea, as Foy's union representative, "breached his duty of fair representation on behalf of" Foy by failing to "[fight] against the ploy to illegally remove her from her position" and instead "actively participat[ing] in this unauthorized, unlawful discharge."  (2d Am. Compl. ¶¶ 160-62.)

The duty of fair representation is a statutory obligation derived from Section 9(a) of the National Labor Relations Act. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "[N]o individual liability exists for a breach of a union's duty of fair representation." *Cammarata v. City Univ. of N.Y.*, No. 17-cv-6456, 2019 WL 3859401, at *4 (E.D.N.Y. Aug. 15, 2019).  Thus, Foy may not hold Sgt. Shea individually

liable for breach of the duty of fair representation.

Moreover, any claim Foy might have had for breach of the duty of fair representation is now time barred. A plaintiff alleging breach of the duty of fair representation must bring a claim within six months after the date on which the plaintiff reasonably should have known that such breach occurred. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 388 (2d Cir. 2015). Based on the allegations in her Second Amended Complaint, Foy reasonably should have known that the alleged breach occurred by February 18, 2020, the date on which she was terminated. (*See* 2d Am. Compl. ¶ 6.) By the time she filed the present action on January 30, 2023, her fair representation claim had become time barred. Accordingly, Foy's fair representation claim is dismissed.

### f. State Law Claims

Foy asserts claims under a number of state statutes and common law theories. (2d Am. Compl. ¶¶ 45–83, 142–59.) Because the Court has dismissed all Foy's federal law claims against the individual state defendants and there is no diversity of citizenship between Foy and these defendants, the Court declines to retain supplemental jurisdiction over Foy's state law claims against them. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (explaining that a "district court should usually decline the exercise of supplemental jurisdiction when all

federal law claims have been dismissed at the pleading stage").

## III. Quirk

Foy's claims against Quirk, the president of NYSCOA during the relevant time, must be dismissed because Foy does not allege any specific act or omission establishing any claim against him. Foy's only specific factual allegations against Quirk are that (1) Quirk was "carbon copied to [Foy's] termination letter" and (2) Sgt. Shea told Foy that Quirk "said, 'there's nothing we can do about this.'"  (2d Am. Compl. ¶¶ 13, 33, 35, 66, 128.)  Foy's lack of specific factual allegations establishing Quirk's personal involvement in any of the alleged misconduct requires the Court to dismiss Foy's claims against him.  *See McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 82–83 (E.D.N.Y. 2016) (dismissing claims against defendant where complaint "contain[ed] no allegations specific to him").

Foy also indicated that three of her claims are against NYSCOA as an entity, (*see* 2d Am. Compl. ¶¶ 57–62, 138–41, 160–62), but she did not name NYSCOA as a defendant, (*see id.* pp. 2–5).  Her Second Amended Complaint contains no specific factual allegations against NYSCOA.  (*See generally id.*)  Thus, to the extent Foy's Second Amended Complaint might be construed as raising any claims against NYSCOA, those claims are dismissed.

## IV.  Leave to Amend

Notwithstanding the defects identified above, the Court

will grant Foy one final opportunity to amend her complaint.
The Second Circuit "generally disfavor[s] the dismissal of *pro
se* complaints without leave to replead." *See Hunt v. Klein*,
476 F. App'x 889, 891 (2d Cir. 2012).  Still, even *pro se*
litigants may be denied leave to amend when an amendment would
be futile.  *Terry v. Incorporated Village of Patchogue*, 826 F.3d
631, 633 (2d Cir. 2016).  An amendment is futile if the
plaintiff's claim fails as a matter of law in a way that could
not be cured through an amendment.  *Elliot-Leach v. N.Y. City
Dep't of Educ.*, 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016).

Here, no amendment could cure the defects in Foy's non-
Title VII claims against UCS or Foy's non-Title VII official-
capacity claims against the individual state defendants because
those claims are barred by the doctrine of state sovereign
immunity.  Additionally, no amendment could cure Foy's official-
capacity Title VII claims against the individual state
defendants because Title VII does not impose individual
liability.  Further, no amendment could cure Foy's individual-
capacity claims against Justice Sweeney, Small, or Razzaq
because those claims are barred by judicial immunity and quasi-
judicial immunity.  No amendment could cure Foy's individual-
capacity claims under Section 242 or the federal mail fraud
statute because those statutes do not authorize private rights
of action.  No amendment could cure Foy's individual-capacity

ADA, Title VII, or Rehabilitation Act claims because those statutes do not impose individual liability.  Finally, no amendment could cure Foy's individual-capacity claims under Section 1986 or her fair representation claims because Foy's own allegations affirmatively establish that those claims are time barred.  Thus, it would be futile for Foy to replead any of those claims.

With respect to Foy's Title VII retaliation claim against UCS and individual-capacity claims against certain of the individual state defendants under FLSA and Section 1983 (not including her due process claims, which are defeated by the availability of an Article 78 proceeding), however, it is at least conceivable that Foy might be able to amend her complaint in a way that could survive another motion to dismiss.  If this were not a *pro se* case, the Court would not be inclined to grant leave to amend.  The Court has already granted leave to amend once in this action, (*see* Order, Mar. 30, 2023), and leave may be denied after "repeated failure to cure deficiencies," *see Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362 (2d Cir. 2023) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Additionally, Foy's litigation over her termination has now consumed the resources of four different courts, and leave to amend also may be denied where "the plaintiff 'is an extremely litigious [litigant] who is quite familiar with the legal system

and with pleading requirements.'"  *See Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (quoting *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994)).

Moreover, were this case to proceed past the pleadings stage, the Court would have serious concerns about how Foy might establish discriminatory or retaliatory motive on the part of any defendant.  The termination letter attached to Foy's Second Amended Complaint states that Foy was terminated for violating conditions set forth in a stipulation of settlement.  (*See* 2d Am. Compl. Ex. D.)  Foy has submitted an affidavit attesting that "there is no stipulation."  (ECF No. 59, Pl.'s Aff. Opp'n Def.'s Mot. Dismiss, ¶ 4.)  UCS, however, has submitted what certainly appears to be the stipulation – signed by Foy – providing that Foy could be "immediately terminated from her employment with" UCS if she violated certain conditions.  (*See* ECF No. 58-5 ¶¶ 3-5.)  Though it is conceivable that an employer might cite a legitimate reason for terminating an employee as a pretext for unlawful conduct, there is not a single factual detail in Foy's 68-page, 174-paragraph Second Amended Complaint even suggesting that might have occurred in the instant case. Moreover, though the Court generally may not consider extrinsic matter in resolving a Rule 12(b)(6) motion, Rule 11(b)(4) provides that a signature on a pleading certifies that "to the best of the [filer's] knowledge, information, and belief, formed

33

after an inquiry reasonable under the circumstances," the pleading's "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information," Fed. R. Civ. P. 11(b)(4), and "[i]t is well-settled that Rule 11 applies to *pro se* litigants," *Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229, 253 (E.D.N.Y. 2014).   Thus, if Foy were to frivolously deny the existence or authenticity of a material document – that she apparently signed – at the pleadings stage in order to survive a motion to dismiss and it later becomes clear that she never had any basis make those denials, that behavior could result in adverse consequences.

Nonetheless, given the Second Circuit's strong and oft-stated preference against dismissing *pro se* pleadings without at least one chance to amend, and out of an abundance of caution, the Court grants Foy one final opportunity to amend her complaint.   If Foy believes that she can draft a third amended complaint in a way that both cures the defects identified above and complies with her obligations under Rule 11(b), she may do so by July 17, 2024.   Should Foy not file a third amended complaint by that date, the Court will consider her to have abandoned this action and will close this case.

### Conclusion

For the reasons stated above, the Court grants all the

defendants' motions to dismiss Foy's Second Amended Complaint and dismisses Foy's claims against them.

The Court grants Foy one final opportunity to amend her complaint to cure the defects identified above.  Should Foy choose to file a third amended complaint, she is ordered do so by July 17, 2024.

The Clerk of Court is respectfully requested to serve a copy of this Memorandum and Order by email and first-class mail and to note service on the docket by July 3, 2024.

**So ordered.**

Dated:    July 2, 2024
          Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

35